ST. LOUIS, INDIANAPOLIS AND EASTERN RAILROAD
COMPANY *v.* RIDGE, ADMINISTRATRIX.

[No. 2,248. Filed March 8, 1898. Rehearing denied June 30, 1898.]

RAILROADS.— *Personal Injuries.*— *Negligence.*— Plaintiff's intestate, while in the employ of a street contractor in loading gravel upon a

wagon near defendant's railroad track where it had been deposited by defendant for such contractor, was struck by defendant's locomotive and cars which had ran off the track, and was fatally injured. The jury found that the locomotive was thrown from the track by reason of the accumulation of gravel thereon from unloading cars. It was also found that intestate was a farmer and had never worked about railroad tracks, and did not know that the track was in a dangerous condition. *Held*, that intestate was not guilty of such negligence contributing to his injury as to prevent a recovery. *pp. 548-555.*

RAILROADS.—*Street Employe.*—*Negligence.*—An employe engaged in shoveling gravel for a street contractor at a place near the railroad track where it had been deposited by the railroad company has the right to assume that the track is in safe condition for the passage of trains and that he may pursue his work of shoveling gravel without danger of injury from the derailment of a passing locomotive through the accumulation of gravel upon the track. *p. 555.*

From the Greene Circuit Court. *Affirmed.*

*John T. Hays* and *J. H. Drake*, for appellant.

*A. D. Leach* and *John S. Bays*, for appellee.

BLACK, J.—The controlling questions in this case arise upon the action of the court in rendering judgment for the appellee upon a special verdict. The appellee, widow of James M. Ridge, deceased, and administratrix of his estate, brought suit to recover damages for his death, caused by his being run upon by the appellant's locomotive engine, which was derailed while drawing a train of cars loaded with gravel near the place where the intestate was at work beside the railway track, engaged in loading a wagon with gravel. It appeared among the statements in the special verdict that Samuel H. Alkire was a street contractor, engaged in graveling certain streets of the town of Sullivan under a contract with the town; that pursuant to a contract between him and the appellant, the latter was carrying gravel from certain gravel pits some miles west of the town, and delivering it to the street contractor for his use in graveling

the streets, the place of delivery being, as requested by him and agreed upon between him and the appellant, in the south part of said town, and between two parallel streets which ran south to and across the railway. The gravel was unloaded from the cars by the use of steam shovels and was deposited for the use of said contractor along the north and south sides of the railway track, and on the appellant's right of way. The gravel was so hauled and placed by the appellant for said contractor, to be loaded and hauled away by teams, by said contractor or his employes, to be used on the streets. A road or driveway for wagons ran along the north side of the railway and parallel therewith between said two streets and north of the gravel there deposited. Wagons for the conveyance of the gravel to the places where it was to be deposited on the streets were brought along said road to the place where the gravel was so deposited. The intestate was working under the employment of said street contractor, and as such employe was engaged in shoveling the gravel into one of said wagons, when the appellant's locomotive and train loaded with gravel, coming from the west at the rate of ten miles an hour, ran off the track about seventy feet west of the place where the intestate was so engaged, and the locomotive struck and fatally injured him. The injury occurred on the 17th of September, 1895. The appellant knew that the gravel was being loaded in wagons and hauled away by persons using teams for said contractor on and before the day of said injury. In order to make it safe for the intestate and others who were engaged in loading and hauling away the gravel, it was necessary to keep the tracks of the railroad free from the accumulation of gravel thereon along the place where the intestate and others were working, and it was found by the jury to be the duty of appel-

lant to keep the railroad track where the gravel was unloaded, free from gravel, sand, and other obstructions, on and before the day of the injury, in order to keep the place safe for persons loading and hauling the gravel. It was further found, that the appellant failed and neglected to keep its track and iron rails over which its locomotives and cars were propelled free from gravel and sand at the point where the same were being so loaded on wagons, on and prior to the 17th of September, 1895; that gravel and sand did accumulate upon and over the irons and tracks of the appellant at said point, where it was being unloaded by the appellant for said street contractor, in sufficient quantities to render the same dangerous to propel locomotives and cars over the same, on and before said day; that the appellant and its servants, agents and employes, knew of said dangerous condition of the track on and before said day; that the gravel had been permitted by the appellant to accumulate upon its tracks to such an extent and in such quantities as to render the track unsafe to propel locomotives and cars upon and over the same for from fifteen to twenty days prior to the day on which the injury occurred; that there was an accumulation of sand and gravel upon the railroad track at a point near where the intestate was injured, at the time and just before he received the injury; that the appellant by its agents, servants, and employes having the management of the locomotive and train of cars that caused the death of the intestate, could have seen "such accumulation of gravel and sand on said track in time to have avoided the same if they had been looking before running upon the same on the morning that the decedent received his fatal injury." It was found that the appellant did not exercise ordinary care in keeping its track free from the accumulation of gravel where it had so un-

loaded it. It was also found that said locomotive and cars belonging to appellant did leave the appellant's railroad track by reason of the careless and negligent manner in which the appellant permitted the gravel to accumulate upon said track at the place where the locomotive and cars did leave the track; that the injury from which the intestate died was the result of the appellant carelessly and negligently permitting the accumulation of gravel upon its tracks in sufficient quantities to throw the locomotive and certain cars attached thereto from the track.

It was found that the intestate was a farmer of that neighborhood, and had no experience in working about railroads or railroad tracks before the day of his injury; that at the time of his injury he was employed by said street contractor to assist in loading gravel in wagons for the purpose of having the same hauled to such points on the streets as the street contractor might direct; that in loading the gravel from the north side of the railroad track where the intestate was injured, it was necessary to drive the wagon which he was assisting in loading, along parallel with the railroad track and its embankment; that the intestate was engaged in loading gravel on a wagon with a shovel about 9:00 a. m., and had been so engaged about an hour and a half; that he had·never been so engaged before; that he was not familiar with the surroundings and conditions of the appellant's railroad tracks at and about that place; that he did not know that gravel unloaded by the appellant's agents and employes had been permitted to accumulate around, about, over and upon the line of the railroad and its track where the gravel was being unloaded, to such an extent that it had partially enveloped the iron rails of the railroad track, and had become packed between the rails thereof so as to make

the passage of locomotives and cars over the track unsafe; and during the whole time he worked shoveling gravel at said place he did not know that there was any danger of the locomotive or cars going off the track at said point by reason of any obstruction along the line of the track.   The train was running from the west, and the intestate was working with his face toward the east, when the locomotive went off the track. The locomotive and two cars of the train left the track at and near the place where he was so at work. They were caused to leave the track by accumulation of gravel upon the track.   In leaving the track the locomotive ran over and upon the side of the embankment and fell off the embankment and against the intestate, while he was so engaged at work shoveling gravel.   The embankment upon which the railroad tracks ran was about four feet high.   The intestate could not see the railroad track and the condition thereof, and the rails of the track and condition thereof, at the point where he was at work while so engaged at work, from the time he commenced working until he received the injury.   He did not see that the railroad track was so obstructed with gravel as to render it dangerous for a locomotive or train of cars to travel thereon, from the time he commenced work until he was injured.   He could not have seen the track and rails of the railroad, and could not have ascertained its condition from the place where he was injured.

The jury answered that from the ultimate facts found by them, and as shown by the evidence, the intestate was using ordinary care and caution for his own safety under all the circumstances, as shown by the evidence, at the time he received said injury.   It was also found that the general manager of the appellant resided at said town, and that he visited the place where the gravel had been deposited at and near the

place where the intestate received his injury, on that morning, and often before that time; that said general manager saw and knew of the tracks and roadway of the appellant being obstructed by gravel in such a manner as to render the track in a dangerous condition to persons working about it when the locomotive and cars passed thereon, on and before the day the intestate was injured.

The train or engine which caused the injury left the track at Section street. The intestate was not upon the track on the day of his injury, and had not been upon the track at or near the place where he was injured, before receiving his injury. He had not been on the south side of the track on said day before receiving his injury. He had not worked at loading gravel into wagons on the south side of the track before receiving his injury on said day. He was six feet from the track when the engine left the track. His hearing and eyesight were good. A train coming from the west could be heard one-fourth of a mile away and could be seen one-eighth of a mile away. He did not make any effort to ascertain whether or not the track was obstructed with gravel, or to ascertain the condition of the track as to safety. He could have seen the train coming, if he had been looking, in time to have gotten to a place of safety, and he could have heard it, if he had been listening, long enough before it left the track to have gotten to a place of safety. He was assisting one Ed Newsom to load his wagon when the train came in sight, and when injured was near the wagon which Newsom was driving. Newsom got into the wagon after the train came in sight. One Brewster was near the intestate before the engine left the track. After the engine was seen coming, and before the injury, Brewster ran. Between the time when the train came in sight and the

time of the injury, the intestate "gave back." The teams and wagons of persons engaged in hauling gravel that morning, passed over the track at or near where the engine left the track, prior to the time when it did so. The teams and wagons passing over the tracks for or with their loads of gravel caused the gravel to spread upon the rails and tracks at or near the place where the engine left the track.

One of the interrogatories to the jury was as follows: "Did the teams and wagons used on the morning of September 17, 1895, in hauling gravel, in passing over the track, cause the gravel to spread upon the same, so as to endanger the safety of the train in passing over the same?" The jury answered: "To some extent."

About thirty teams were hauling gravel that morning before the injury. The gravel was not being unloaded at a regular station. The gravel was furnished by the Merom Gravel Company. The intestate was not in the employ of the appellant. The contractor for whom the gravel was being delivered at said place, in order to have it so delivered, agreed with the appellant that, after the gravel was unloaded and the track was cleared up from obstructions of gravel caused by unloading, the contractor would keep the track clear from obstruction caused by removing the gravel. The contractor had one Robert Gilkerson at the track in charge of the work at the point where the intestate was injured.

The verdict contained the following interrogatories and answers: "Was said Gilkerson employed by said Alkire to see that the track was kept free from obstructions of gravel while hauling same away, on the 17th day of September, 1895? Answer. Yes." "If your answer to last preceding interrogatory be yea, was said duty performed? Answer. No."

St. Louis, Indianapolis and Eastern R. R. Co. *v.* Ridge, Admx.

It was further found that the appellant's section foreman, Bedwell, on that morning, did not clear the track and put it in proper shape for the passage of trains; that he did not at all that morning clear the track. The engine which hurt the intestate was hauling a train loaded with gravel, to be delivered to the contractors at the place where the intestate was hurt. The condition of the track at all points where the gravel was being unloaded was not in plain view to all persons engaged in hauling or loading gravel.

In support of the claim that the appellant was entitled to judgment on the verdict, it is suggested that it fails to show the intestate to have been free from contributory negligence; that he had, or by ordinary care and diligence should have had, equal knowledge of the danger with the appellant; and that, being in the employ of the street contractor, he had no better right to recover than the latter would have had if he had been injured. We think it sufficiently appears that the intestate did not by his own negligence contribute to his injury, but exercised ordinary care. He was in the performance of his duty as an employe of the street contractor. It was not a part of his duty to go to the place where the dangerous condition of the railway track could be seen, and he had not been to that place and did not know the condition of the track. He had the right to assume that the track was in a fit condition for the passage of trains, and that he might pursue his work of shoveling the gravel without danger of injury from derailment of an engine through the accumulation of gravel upon the track.

The argument of counsel and the authorities cited therein embrace propositions of law relating to the rights and obligations existing between master and servant. The duty of the appellant toward the intestate was not that of a master toward his own servant,

and the obligation of the intestate was not that of a servant toward his own master. Such contractual relation did not exist between them. The intestate was rightfully present and engaged at work upon the premises of the appellant and near its approaching train, not as a servant of the appellant, not as a trespasser, and not as a mere licensee, but upon invitation of the appellant through the agreement between it and the street contractor for the delivery of the transported gravel at that place to be removed therefrom by the contractor through his employes, one of whom was the intestate. The fact that the place of delivery was not a depot or a place usually open to the public, can make no difference in the legal principle applicable. A place more convenient for the delivery of the particular freight having been adopted by agreement, the invitation to come thither to receive it and take it away imposed upon the appellant an obligation of care for the safety of those who rightfully came for such purpose of the same character as that owed by it to persons coming for the transaction of business with it to more public places selected and provided by it for such purpose.

The only matter apt to arrest particular attention in the examination of the verdict is that embraced in the findings relating to an agreement between the street contractor and the appellant concerning the cleaning of the track. It had been agreed between the appellant and the contractor that after the gravel was unloaded and the track cleared up from obstruction of gravel caused by unloading, the contractor would keep the track clear from obstruction caused by removing the gravel. The contractor had a man employed to see that the track was kept free from obstructions from gravel while hauling it away. It appears that neither this man nor the appellant cleaned

the track. As between the appellant and the contractor, the duty rested upon the former first to clear the track from the obstruction caused by unloading, and then, that being done, it became the duty of the contractor to clear the track from the obstruction caused by removing the gravel. Teams hauling gravel had passed that morning over the track, and to some extent had caused the gravel so to spread upon the rails and tracks, at or near the place where the engine left the track, as to endanger the safety of the train in passing. It is not found that this spreading of the gravel caused the derailment of the engine, and it appears that the appellant had not performed its duty of removing gravel accumulated from unloading, and therefore no duty of the contractor under his contract with appellant had arisen respecting the gravel which was so spread. It appears that the appellant had failed to perform its duty to keep the track free from gravel, which it had permitted to accumulate upon the track so as to render it dangerous; that it had been in this condition many days, that the appellant had knowledge of the unsafe condition of the track at and before the time of the injury, and that the injury was caused by this accumulation permitted by the appellant, for which it was responsible.

Other matters are argued by counsel, but the merits of the cause are embraced in the special verdict. We have examined all objections discussed on behalf of the appellant, and we do not find in them any sufficient reason for disturbing the result reached in the trial court. The judgment is affirmed.