HANNAH E. COPLEY, and CHARLES BRYANT
COPLEY and LOIS HANNAH COPLEY, Minors,
by their Guardian Ad Litem, HANNAH E. COP-
LEY, Respondents, v. UNION PACIFIC RAIL-
ROAD COMPANY, a Corporation, Appellant.

No. 1433.    (73 Pac. 517.)

1. **Railroads: Injury to Licensee: Loading Cars: Notice of
   Intention to Move Cars: Negligence.**
   Where a railroad places cars on a side track to be loaded by ship-
   pers, failure of the company to notify persons engaged in load-
   ing the cars of its intention to run an engine or other cars
   on the side track, and against those being loaded, constitutes
   negligence justifying a recovery for injuries sustained by per-
   sons so engaged in loading the cars.

2. **Same: Warning of Danger: Ringing Bell: Sufficiency.**
   Where persons engaged in loading a freight car on a side track
   had no notice of an intention on the part of operatives of a
   freight train to back the train on the side track and against
   the car, and from a position near the car the switch leading on
   to the side track was not visible, the mere ringing of the bell on
   the locomotive did not constitute notice of the railroad's in-
   tention to back the engine on the side track.

3. **Same: Instructions: Proper as Applicable to Facts.**
   A hay car had been placed by defendant on a side track to be
   loaded by a shipper, and was located between certain other cars,
   which were not attached to it at one end.  Deceased was as-
   sisting in loading the car, when a train approached on the
   main track and began switching, during which the loading of
   the hay was discontinued. The conductor of the train saw and
   recognized deceased near the car, but no notice was given of
   an intention to back the engine on the side track.  Deceased,
   after closing one of the doors of the car, attempted to cross
   the track between the cars, and while so doing he was caught
   by the engine pushing the cars together, and received injuries
   from which he died.  *Held,* that an instruction that when a
   railroad company puts cars on a side track to be loaded, the
   company has no right, without reasonable notice or warning
   to persons engaged in loading the car, to back a train upon

the side track, while the cars are being loaded, and that, while persons engaged in loading the same are bound to use their senses to avoid danger, they are justified in giving their undivided attention to their work, and assuming that the company will not render their position hazardous without warning, was not objectionable as inapplicable to the facts.

**4. Same: Statements of Deceased: Effect.**

Statements by deceased after his injuries, and while his mind was beclouded by opiates, that when he attempted to go between the cars he was tired and stopped to rest, and did not realize that an engine was around there, and that he blamed no one but himself for the accident, were not of themselves, sufficient to release the railroad company from liability for negligence in injuring him.

**5. Same: Contributory Negligence.**

Where deceased was engaged in loading a freight car on a side track, he not being notified of the intention of operatives of the train on the main track to back the engine against other cars on the side track and the car being loaded, the fact that deceased attempted to cross the switch track by going between the car being loaded and certain other cars, instead of going around two other cars beyond the car in question, in which event he would not have been injured, did not constitute contributory negligence as a matter of law.[1]

**6. Same: Weight of Evidence: Review.**

Under Constitution, article 8, section 9, declaring that in cases at law the appeal shall be on questions of law alone, where the evidence in an action for wrongful death presented questions for the jury on the issues of negligence and contributory negligence, the Supreme Court has no power to interfere with the jury's verdict on such issues, though it might differ with the jury as to the weight of the evidence.

BARTCH, J., dissenting.

(Decided August 14, 1903.)

Appeal from the Third District Court, Summit County.—*Hon. S. W. Stewart*, Judge:

Action to recover damages for the death of plaintiffs' husband and father alleged to have been caused

---

[1]Fritz v. Electric Light Company, 18 Utah, 493; 56 Pac. 90; distinguished.

by the negligence of the defendant. From a judgment in favor of the plaintiffs, the defendant appealed.

AFFIRMED.

*Le Grand Young, Esq.,* and *W. H. Hatteroth, Esq.,* for appellant.

*W. R. White, Esq.,* and *L. R. Rogers, Esq.,* for respondents.

### STATEMENT OF FACTS.

This action is brought by Hannah E. Copley and her two minor children, Charles Bryant Copley and Lois H. Copley, heirs at law of Bryant Copley, who was fatally injured in defendant's depot yards at Coalville, Utah, July 13, 1901, while engaged in hauling hay and loading it into a freight car for transportation over defendant's line of railroad, which car was placed by defendant upon one of its side tracks for that purpose. The side track upon which the car was standing was at the time, and for fifteen or twenty years prior thereto had been, used by defendant company to place cars upon that were loaded and unloaded by merchants of Coalville, and parties who shipped and received freight at this station, and was also used for storing box, coal, and other kinds of cars. The car at which Copley was at work, and which is designated as the "hay car," was attached to the south end of a string of three other freight cars. About forty feet to the north (the exact distance is not shown) of the cars to which the hay car was coupled, and on the same side track, were two more cars, and immediately south of the hay car was a block of two others, making in all, eight cars, in three detachments, on this side track. The distance between the north drawhead of the two cars on the south and that of the hay car was about six inches. It appears from the record that the deceased, Bryant Copley, and two

other young men, were at work unloading hay from a wagon into the hay car at about four o'clock in the afternoon of July 13, 1901, when a crew of the defendant's trainmen entered the depot yards with a train of cars loaded with coal, and, after weighing the same, were in the act of backing upon the main track, which is to the west of and next to the side track upon which the car was standing which was being loaded. The car was being loaded from the west side, and in plain view of the main track. Frank Wright, one of the young men who were at work loading the car, in order to prevent his team from being frightened at the moving train, removed it and the wagon, which was partly unloaded, to another part of the yards, until the train passed the car in question, and left his brother Albert Wright and Copley to adjust and put the bales of hay in order that had been loaded into the car. As the train moved up the main track to the north, Wright and Copley were standing in the hay car by the open door, facing the west, in plain view of, and about thirty-six feet from, the main track. Albert Wright testified that both he and Copley were seen in the car by the conductor, who nodded to each of them, as he passed by on the train. This, however, is denied by the conductor, who testified that he did not see either Wright or Copley, and did not know that they, or either of them, were at the time in or about the car. After the train had gone by, Copley and Wright stepped out of the car on the east side, and closed the east door thereof. In the meantime the train crew that had just passed up the main track had, unbeknown to either Wright or Copley, left it, and were switching cars on the side track on which the hay car was standing. This side track, as it extends north from where the hay car stood, curves to the west, and the engine, when it came upon the side track, could not be seen by Wright and Copley, because of the curve, and the cars to the north of them that were upon the same track, and which hid the engine from view. They could, however, have seen the engine, had

they stepped back from the car east fifteen or twenty feet. After closing the east door of the car they started to return to the west side—the side from which the car was being loaded—and in doing so passed between this and the car to the south of it. Wright went through first, and Copley was in the act of following him, and had gotten partly over the drawheads, when the engine was propelled against the cars to the north, which shoved the hay car very slowly to and against the car to the south of him, and the calf of his leg was caught between the drawheads and badly pinched and bruised, from which injuries he died July 23, 1901. When the conductor, engineer, and fireman first entered the yards on this occasion, they saw parties working around the hay car, and knew what they were doing. The conductor testified that he saw Frank Wright as he was driving his team away from the car, and observed that there was no one on the wagon with him.

The testimony for the defense showed that immediately after the accident Copley stated to members of the train crew who were operating the engine and cars at the time he was hurt, that he did not blame any one but himself; that "I heard the bell ringing, but didn't know the engine was so close; didn't think the engine was going to bump the cars we were loading." The conductor testified that soon after the accident Copley stated to him that he (Copley) was tired, and stopped between the cars to rest, and that he blamed no one for the accident; that he saw him at his home the next day, and Copley again said that "he knew we were coming in at the other end, but he was tired and fatigued, and he did not think we were so close; that he didn't care whether the company paid him a cent or not; and that he blamed no one but himself for the accident." The conduct and demeanor of the conductor during the trial of the case, as shown by the record, were such as would not tend to inspire a jury with confidence in his testimony. In fact, his behavior would tend rather to cast discredit on what he said. Other witnesses who

visited Copley during his illness testified that he stated
he did not blame any one but himself for the accident;
that he was as much to blame as any one.    One witness,
who waited on Mr. Copley a part of the time after he
was hurt, testified that Copley stated to him as follows:
"I was very tired, and I didn't realize hardly what I
was doing.    I was attempting to go over, and didn't
realize that an engine was in the yard, or anything, when
the train come together; '.  .  .  did not realize that
there was an engine anywhere around."   The conduc-
tor and deceased were "old schoolmates," and the rec-
ord shows that they were on familiar and friendly terms
socially, and that at the time the statements were made
there was no apprehension in the mind of Copley, and
others who visited him, that the injuries would prove fa-
tal, but it was the general impression "that it would
only be a short time before he would be around again."
At the time he talked with the conductor he was weak
and nervous, and not in a condition to make a written
statement of what occurred at the time of the accident.
The record shows that soon after he was injured he
was given opiates, and kept almost continually under
their influence until his death, and that most of the time
he was irrational and not in his right mind.

Defendant, in its answer, alleged contributory neg-
'ligence on the part of Copley, and, when plaintiffs rested
their case in chief, moved the court to direct a verdict
in its favor on the ground that the deceased was guilty
of contributory negligence in attempting to pass be-
tween the cars on the side track when he was aware that
defendant was moving its engine and cars about the
yard.    The motion was overruled, and at the conclu-
sion of the testimony in the case was renewed, and again
overruled.    The case was submitted to a jury, who re-
turned a verdict in favor of plaintiffs in the sum of
$10,775.    Defendant appeals.

McCARTY, J., after stating the facts, delivered
the opinion of the court.

The decisive questions raised by this appeal are: First, was the company negligent in entering in and upon the side track with its engine and coal cars and propelling them against the block or string of cars to which the hay car was attached while Copley was at work loading it, without first giving him special notice or warning? And, second, was it negligence on the part of Copley in attempting to pass between the cars on the side track where he was at work, when he knew appellant's train crew was in the yard with a moving train, and in the vicinity of where he was at work?

The rule is well settled by the great weight of authority that, when a railroad company places cars upon a side track for the purpose of being loaded by shippers and consignors of freight, it is the duty of the company to exercise ordinary care to protect the parties from injury who are at work, with its knowledge and consent, unloading such cars, and the company has no right to run or back an engine or train of cars upon the side track, and against the cars that are being loaded, without first giving special notice or warning to the parties, their agents or servants, who are at work loading freight into the cars so placed at their disposal. 2 Thompson on Negligence, sec. 1761; Newson v. N. Y. Cent. R. Co., 29 N. Y. 383; Toledo, St. L. & K. C. R. Co. v. Hauck (Ind. App.), 35 N. E. 573; Ill. Cent. Ry. Co. v. Hoffman, 67 Ill. 287; Chicago & N. W. Ry. Co. v. Goebel, 119 Ill. 515, 10 N. E. 369; Pittsburg, C., C. & St. L. Ry. Co. v. Ives, (Ind. App), 40 N. E. 923; St. Louis, I. & E. R. Co. v. Ridge (Ind. App.), 49 N. E. 828. The record shows that the hay car was placed on the side track by the same train crew who were operating and running the engine and coal cars at the time of the accident which resulted in Copley's losing his life, and that the conductor and other members of the train crew, when they first entered the depot yard on this occasion, saw parties loading hay into the car from a wagon; and there is evidence which shows that a little later on, as the train moved along

the main track and passed by the hay car, and just before it entered upon the side track, the conductor saw and recognized Wright and Copley standing in and near the open door of the car. Hence there is evidence that the company had actual notice of their presence there, and it was clearly its duty, under the circumstances, to give them notice before backing or pushing its cars upon the side track and against the cars to which the hay car was coupled.

Appellant contends that the continuous ringing of the bell was notice to the deceased that the engine might at any time enter upon the side track where he was at work, and was a sufficient notice to put him upon his guard. While shippers and receivers of freight their agents and servants, who, with the knowledge and express or implied consent of a railway company, are at work loading or unloading cars standing on a side track in its depot yards for that purpose, are required to exercise ordinary care, and keep their eyes and ears open for all known instruments of danger that may come within range of their senses, yet they may give their undivided attention to their work, and are justified in assuming that the agents of the company will give them due notice and warning of all approaching trains that may come upon the side track where they are at work; and especially is this the rule where, as in this case, the approaching train is hid from their view. The ringing of the bell as the train passed along the main track was no notice to the deceased that it was about to be moved onto the side track upon which the hay car was standing, and the fact that the conductor and other members of the train crew were in a position to see him (and there is evidence that he was both seen and recognized by the conductor) as they passed, and failed to give him notice that they were about to move the train onto the side track where he was at work, might have been regarded by him as an indication that they had no such intention, which, under the circumstances, would not have been an unwarranted presumption on his part.

The court instructed the jury, in part, as follows: "When a railroad company puts unloaded cars upon the side track for the purpose of being loaded by the owners of the freight, and such owners, their agents or servants, with the express or implied consent of the company, proceed to load the car, the company in such case has no right, without reasonable notice or warning, to run or back a train upon the side track while the cars are being loaded. And while in such case those engaged in the work of loading are not permitted to close their eyes or ears to what comes within the range of their senses, yet they may give their undivided attention to their work, and are justified in assuming that the company will not molest them or render their position hazardous without such notice or warning." Counsel for appellant concedes that this instruction correctly stated the law in the abstract, but insists that it does not obtain when applied to the facts in this case, and that the giving of it was error. We do not think there is any merit in this contention, as the instruction not only correctly states the law, but is especially applicable to this case.

Appellant puts special stress upon the statements made by Copley to the effect that he did not blame any one but himself for the accident. The statements are not sufficient of themselves to release the company from liability, if any, on its part, for the accident, and especially in view of the fact that there is evidence in the record that tends to show he was not in his right mind when he made them. In any event, they could be considered only so far as they might tend to show negligence on the part of the deceased. The great preponderance of the evidence shows that Copley did not know, and had no notice or warning, except the ringing of the bell, which, under the circumstances, was, at most, an imperfect notice (Ry. Co. v. Hoffman, supra), that the train had been moved onto the side track

upon which the hay car was standing at the time he started to pass between the cars.

Albert Wright, the only eyewitness, signed a written statement, which was prepared by the company, of what occurred, which statement is in evidence, and, in part, is as follows: "We went over to the west side, to be there when the team came back to put in the balance of the hay. I didn't know that the engine was working on the same track the car of hay was on there. I don't suppose that Mr. Copley knew that, either. When we started across we could not see the engine—could not see which track it was on—because we did not step east far enough to see."

Appellant further insists that as deceased could, with perfect safety, have gone around the two cars which stood immediately south of the hay car, it was negligence per se for him to pass between the cars, and that, as a proposition of law, the respondents can not recover, and in support of this contention cites and relies upon the case of Fritz v. Electric Light Co., 18 Utah 493, 56 Pac. 90. There is a marked distinction between that case and the one under consideration. The facts in the two cases are not at all similar. In the Fritz case the work consisted of oiling and taking care of live dynamos—machinery in the process of generating electricity—and the employment was inherently dangerous, and was known by Fritz to be so, and his safety did not in any way depend upon the degree of care and caution exercised by his fellow servants or agents of the company. Had Fritz been engaged in working at and around the machinery at a time when it was not charged with electricity, with the express or implied understanding with the company that it was to remain in that condition until he completed his work, and the company had, without previous notice or warning to him, turned on the current, with fatal results to Fritz, the facts would not have been dissimilar in some respects to those of the case under consideration, and the result in that case might have been different. In

the case before us the deceased was not in the employ, of the appellant, nor a fellow servant of its train crew, and the work at which he was engaged was not inherently dangerous. So long as the car around which the deceased was working was not molested by appellant or its agents, there was no danger connected with the work. Had Copley known or had notice before he attempted to pass between the cars that the engine and coal cars were moving on the side track referred to, or had the cars at the time he started to pass between them been in motion, the facts in the case, in some respects, would be similar to those in the case of Fritz v. Elect. Light Co., supra. As the facts and conditions under which Fritz lost his life were entirely different from those which caused Copley's death, the same rule of law does not necessarily govern in both cases.

We are of the opinion, and so hold, that, under all the facts and circumstances of this case, the questions of negligence on the part of the appellant, and contributory negligence on the part of Copley, the deceased, were questions for the jury to determine. The jury having found adversely to appellant on these issues, this court, under section 9, article 8, Constitution, is powerless to interfere with the verdict, even though we might differ with the jury as to the weight of the evidence.

We find no reversible error in the record. The judgment is affirmed. Costs of this appeal to be taxed against the appellant.

BASKIN, C. J., concurs.

BARTCH, J.—I am of the opinion that, in this case the deceased received his injuries because of his own negligence, and therefore must dissent from this judgment. At the time of the accident he was not working in the car, and could easily have kept out of danger. Frank Wright, one of plaintiffs' witnesses, who drove the team from the car, testified: "There was nothing

further to do while I was away, except to close the doors. They had not closed the door until after I had moved, but they closed it before they started between the cars." This shows that at the time work had not absorbed his attention, and it was his duty to look out for the engine when he heard the bell ringing. That he heard the bell there is no doubt, from the plaintiff's evidence alone. There was no necessity for him to attempt to cross between two freight cars over the drawheads. He could have passed to the other side of the cars in perfect safety by walking the length of two cars, which would have taken less than a minute, and he had plenty of time to do so. Instead of doing this, he, from mere choice, attempted to pass through an obviously and admittedly dangerous place, and thus received the injuries which resulted in his death. At the same time the driving away of the team from the car may have caused the crew on the engine to believe that all had left the car. All this seems obvious from the evidence introduced by the plaintiffs, regardless of that of the defendant. It is also shown that the car was moved quite slowly, and not more than a foot. To my mind, this is one of those unfortunate accidents which was caused by the thoughtlessness of the injured himself, and for which, under the rules of law, the defendant is not liable. Evidently the deceased himself regarded the injury as the result of his own thoughtlessness. This is apparent from the testimony of several witnesses to the effect that after he had received the injury he said no one was to blame but himself; that it was his own fault. The deceased having himself been negligent, as I view the case, and his negligence having caused the injury, or at least contributed to it, the plaintiffs have, in my judgment, no right of recovery, notwithstanding their great misfortune and bereavement, which naturally excite our sympathies.