# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## APRIL TERM, 1914

[No. 2090]

ROBERT S. PETERSON, RESPONDENT, *v.* PITTSBURG SILVER PEAK GOLD MINING COMPANY (A CORPORATION), APPELLANT.

[140 Pac. 519]

1. TRIAL—RULINGS ON EVIDENCE—REMARKS BY TRIAL JUDGE.
    In ruling on the admissibility of evidence, the trial judge should confine his remarks strictly to that question, and not make unnecessary statements, such as that the evidence will do no harm, or as to one of the attorneys being a good fellow, etc.

2. TRIAL—HARMLESS ERROR—REMARKS OF TRIAL JUDGE.
    Remarks by the trial judge which are calculated to mislead the jury or prejudice the rights of either party are reversible.

3. APPEAL AND ERROR—HARMLESS ERROR—REMARKS OF TRIAL JUDGE.
    In denying a motion to strike certain evidence, the trial court remarked, "I don't think the testimony does you any harm," and, in overruling an objection to an interrogatory, stated to appellant's attorney, "You are not on surrebuttal testimony, but I will allow it just to show you that we give every leeway possible, possibly more than the court should," and, in ruling on a motion to strike an answer, also stated to counsel, "I have known you a long time, and I like you, and you are a good fellow; but, when you come to the trial of a case, I know an attorney is ambitious; I know he wants to do everything in the world; and I admire that; but don't step beyond the bounds." *Held* that, while the trial judge's remarks were improper, they were not reversible error, in absence of a showing of prejudice to appellant therefrom.

4. APPEAL AND ERROR—BURDEN OF SHOWING ERROR.
    The parties claiming error on appeal must clearly establish it.

5. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — COMPARATIVE NEGLI-
   GENCE.
   Rev. Laws, sec. 5651, providing that, in actions against a
   mine owner for damages for injuries to an employee, the
   employee's contributory negligence shall not bar a recovery,
   where it was slight and the employer's negligence was gross in
   comparison, substitutes for the common-law rule of contributory
   negligence the rule of relative or comparative negligence.

6. MASTER AND SERVANT—RISKS ASSUMED.
   While a miner must use reasonable care for his own safety,
   he does not assume the risk of a hidden danger created in his
   place of employment by other employees, over whom he has no
   control, and of which he has no warning or notice, so that a
   miner would not assume the risk of injury from drilling into an
   unexploded hole, left in that condition by a previous shift of
   workmen, of which he had no notice.

7. MASTER AND SERVANT—MASTER'S DUTIES—SAFE PLACE OF WORK.
   The master must furnish a reasonably safe place of work.

8. RELEASE—EXECUTION—CONFLICTING EVIDENCE.
   Where evidence is conflicting as to the due execution of a
   written lease signed by the plaintiff in an action for personal
   injuries, the court will not disturb the verdict.

9. TRIAL—OFFER OF EVIDENCE—SUFFICIENCY.
   In a miner's action for personal injuries, defendant offered
   in evidence a conversation between witness and plaintiff some
   time after the accident to show, as stated by counsel, that the
   action was instituted in bad faith, with knowledge by plaintiff
   that he knew that the shift boss and defendant were not respon-
   sible for his injury, and that he alone was responsible, and to
   contradict any evidence of negligence by defendant, and to
   prove its claim that the accident was not caused by its negli-
   gence, and to contradict plaintiff's evidence tending to show
   negligence by the defendant. *Held,* that the offer was sufficient
   to warrant admission of a declaration against interest by the
   plaintiff.

10. EVIDENCE—ADMISSIONS—DECLARATIONS AGAINST INTEREST.
    What a party voluntarily admits to be true may be reasonably
    taken to be true, notwithstanding that the admission is contrary
    to his interest.

11. EVIDENCE—DECLARATIONS AGAINST INTEREST.
    The voluntary statement of one injured, made after the
    accident, and relating thereto, is admissible, if relevant, for
    consideration by the jury in connection with the other evidence.

12. EVIDENCE—ADMISSIONS.
    Every prior statement of a party inconsistent with his
    present claim tends to throw doubt upon it, and is admissible
    in evidence as an admission against interest, regardless whether,
    when the statement was made, it was in his own favor or
    against his interest.

13. EVIDENCE—ADMISSIONS—WEIGHT.
   The weight to be given to an admission or declaration against interest is for the jury.

14. APPEAL AND ERROR—PRESENTATION BELOW—GROUNDS OF OBJECTION—ADMISSION OF EVIDENCE.
   Where an objection to evidence was sustained, not because of the form of the offer, but on the ground that the evidence was not admissible for the purpose offered, appellant cannot claim on appeal that the evidence was properly excluded because the offer was not in proper form.

15. APPEAL AND ERROR—HARMLESS ERROR—PREJUDICIAL EFFECT.
   Unless an error substantially affects the rights of the complaining party, so that it could be reasonably claimed that a different result might have been reached, had the error not occurred, it is harmless.

16. APPEAL AND ERROR—HARMLESS ERROR—RULINGS ON EVIDENCE.
   Error in admitting or excluding evidence on material issues is reversible.

APPEAL from the Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Action by Robert S. Peterson against the Pittsburg Silver Peak Gold Mining Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. **Reversed and remanded for new trial.**

*Samuel Platt* and *George Martinson*, for Appellant.

*Dixon & Miller*, for Respondent.

By the Court, MCCARRAN, J.:

This is an action in damages for personal injuries, alleged to have been sustained by the respondent through the negligence of the appellant, in whose employ he was engaged.

The record discloses that the respondent, Peterson, on the 14th day of June, 1911, was a member of the 6 p. m. shift in the Mary mine, and on the date of the accident was engaged as a machine driller in the Valcalda tunnel. At about 1 o'clock in the morning of the 15th of June, the respondent, while so engaged, drilled into an unexploded hole left by the previous shift. The result of his act was an explosion, by reason of which one member of the shift was instantly killed, another died in nine days

thereafter from the injuries received, another was more or less seriously hurt, and the respondent received serious injuries.

The trial was had before a jury in the Second judicial district court, and a verdict was rendered in favor of respondent in the sum of $29,250. The appellant in this case, defendant in the court below, interposed and especially pleaded contributory negligence on the part of respondent, assumption of risk, and an executed release in accord and satisfaction.

From the judgment rendered in favor of respondent, and from the order denying appellant's motion for a new trial, appeal is taken to this court.

The appellant sets up four major grounds upon which it relies for reversal, namely: Prejudicial statements and remarks made by the court during the course of the trial; erroneous rulings as to the admissibility of testimony made during the course of the trial; failure on the part of the respondent to establish the negligence of appellant; and errors of the trial court in giving certain instructions and refusing certain other offered instructions.

Assignment No. 53 has to do with the remarks of the court made in ruling upon the motion of appellant to strike certain testimony. The court in that instance ruled against the moving party, and, in the course of his ruling, made this remark: "I don't think the testimony does you any harm."

Assignment No. 77 is with reference to the remarks of the court in overruling an objection made by counsel for respondent to an interrogatory propounded by counsel for appellant, in which the court said: "I will tell you. (Addressing counsel for appellant.) Just as soon as this went in evidence, or you could have called Mr. Jussen right after they were put in evidence, or you could do it afterwards. You are not on surrebuttal testimony, but I will allow it just to show you that we give you every leeway possible, possibly more than the court should."

Assignment No. 76 is with reference to the remarks of the court, presumably addressed to counsel for appellant, while he was cross-examining a witness. The transcript is as follows:

"Q. Now you were not there, were you, when this explosion occurred? A. I hope not.

"Q. And all that you know about the explosion was what you speculated upon or the conclusions you drew after you went up there; is that true? A. Yes, sir.

"Mr. Miller—Object; it is a compound question.

"Mr. Hairston—And a misleading question.

"The Court—Sustain the objection.

"Mr. Platt—Exception on the ground it is proper cross-examination.

"Mr. Miller—Move the answer be stricken out.

"The Court—I will tell you. I have known you a long time, and I like you, and you are a good fellow; but, when you come to the trial of a case, I know an attorney is ambitious; I know he wants to do everything in the world; and I admire that; but don't step beyond the bounds."

To the latter remark exception was taken by counsel for appellant.

All of these remarks set up as assignments of error by appellant were made in the presence and hearing of the jury, and were excepted to by counsel for appellant. It is difficult to understand why remarks of the character appearing in the record in this case are necessary at all on the part of the trial court. While it is true that not every remark of the trial court will constitute reversible error, where it is made with reference to the admissibility of evidence, yet there is nothing of which a *nisi prius* judge should be more careful than in his remarks or assertions made with reference to admitted or rejected testimony during the course of a trial. The average juror is a layman; the average layman looks with most profound respect to the presiding judge; and the jury is, as a rule, alert to any remark that will indicate favor or

disfavor on the part of the trial judge. Human opinion is ofttimes formed upon circumstances meager and insignificant in their outward appearance; and the words and utterances of a trial judge, sitting with a jury in attendance, are liable, however unintentional, to mold the opinion of the members of the jury to the extent that one or the other side of the controversy may be prejudiced or injured thereby.

[1] A trial judge's ruling upon the admissibility of testimony is a ruling based solely upon the law of evidence; his comments or assertions or declarations have no place in the ruling, save and except in so far as they may express his idea as to the applicability of the matter presented, based upon the rules of evidentiary law. As to whether or not an attorney is a good fellow or not, a good fellow plays no part in the enforcement of a rule admitting or excluding testimony. As to whether or not a particular piece of testimony does harm or does not do harm is not for the court to say, and remarks upon this phase, made in the presence of the jury, can have no beneficial effect; they are better left unsaid.

[2-3] If remarks made by the judge in the progress of a trial are calculated to mislead the jury or prejudice either party, it would be grounds for reversal. We are not inclined to view the remarks made by the trial judge in this case in that light. (*Deshler* v. *Beers*, 32 Ill. 368, 83 Am. Dec. 274.)

[4] While it may be reasonable to assume that remarks of the trial judge, such as those complained of in this case, may have an influence prejudicial to one or the other side of the case, yet, in view of the rule that the party who alleges error must establish the same clearly, we would not disturb the judgment in this case by reason of the errors assigned with reference to the remarks of the trial court. (*McMahon* v. *Eau Claire*, 95 Wis. 640, 70 N. W. 829.)

Appellant assigns as error the refusal of the trial court to grant appellant's motion for a nonsuit and for an instructed verdict. In this respect it is the contention

of the appellant that an employee, injured from drilling into an unexploded shot, is held to assume the risk as being one incident to his employment, and further contends that the doctrine which requires the master to furnish a reasonably safe place for his employees to work is not applicable, where the object of the work performed is to continually change the place.

[5] In reviewing this phase of the case, it must be observed that, by statutory enactment in this state, the common-law rule of fellow servant has been modified, and the common-law rule of contributory negligence has been superseded by statutory rule, which is more or less properly termed the rule of "relative" or "comparative" negligence. (Sections 5649 and 5651, Revised Laws; *Lawson* v. *Halifax*, 36 Nev. 596, 135 Pac. 611.)

While many of the authorities relied upon by counsel for appellant would sustain his contention in jurisdictions where the common-law rule of fellow servant prevails, they are not applicable under statutes such as ours. In other cases relied upon by appellant, the statement of the facts discloses that the party injured was a machine driller following himself with no intervening shift, and had personal knowledge that one or more of the holes which he himself had charged had failed to explode. These cases are not analogous to the one at bar, for the reason that the record here discloses that the respondent worked alternate shifts, and that it was his duty, in the course of his employment, to set up his machine and drill immediately following the explosion of a round of holes drilled and charged by the preceding shift, and hence could have no personal knowledge of the failure of any one of the holes to explode. There is a substantial conflict in the testimony as to whether or not the respondent was warned, or had any notice, that the preceding shift had left an unexploded hole. In fact, the record strongly bears out the contention of respondent that he had no notice.

It appears to be almost conclusively established that the appellant company had no regular system whereby

notice of unexploded holes were bulletined or reported by the off-going shift. Whatever may be said as to dangers incident to the employment of mining, however forceful it may be contended that missed holes are frequent occurrences in mining operations, and that such is known to the average miner, it cannot, in our judgment, be successfully argued that in modern mining operations, where one group of men follow and take up the work of a previous group, they should assume the risks attendant upon latent or immediate dangers left by those who had previously been engaged in prosecuting the work at the same place. This is especially true in view of modern mining appliances, methods, and regulations. However diligent the servant should be, however painstaking in looking out and caring for his own safety, he should not be expected to assume either the mistakes of those who preceded him in the same vocation, or their failure to carry out the work in the usual and customary manner. Especially is this true in the case of a missed hole left by a previous shift, hidden and obscure as it would necessarily be. Where the oncoming shift receives no warning or notice of its existence, they could not, in reason, assume the risk of a danger which, under ordinary circumstances, they could not expect to exist.

[6] Reasonable care and reasonable diligence in securing his safety is, of course, required on the part of a miner, to the end that he shall not, by his own wilful negligence, bring about his own destruction or his own injury, but, when a hidden danger is placed by others over whom he has no control, and from whom he may receive no warning or notice, in a place where he is to perform his services, he should not be required to assume the risk thereof. As was stated in the case of *McMillan v. North Star M. Co.*, 32 Wash. 579, 73 Pac. 685, 98 Am. St. Rep. 908: "Dangers arising from a missing blast cannot be classified with dangers which are incidental to nature's hidden forces, and which cannot be known or foreseen by human prescience."

If the respondent in this case had belonged to the shift on which one of the round of holes charged had failed to explode, he would necessarily be charged with notice of such danger, and, under such conditions, he might be held to assume the risk if he returned to the place and drilled into the unexploded hole; but, belonging, as he did, to another group of men, he could not be expected to assume the risk of dangers hidden and unusual, arising from an unexploded hole, being in no position from which he could have actual knowledge of such danger, and receiving no notice from persons having such knowledge.

[7] Under such conditions and following the rule that the master is bound to furnish a reasonably safe place in which for the servant to perform his duty, and is bound to throw about the servant reasonable protection, it became the positive duty of the master to provide either reasonable means, or, at least, reasonable methods to notify the servant of the extra hazard which he was about to encounter, where an unexploded hole was left in the very place where the servant was bound to perform his services.

From the record in this case, it is disclosed that it is customary in some mines, and a positive rule in others, that the off-going shift shall give notice of missed holes by posting on a blackboard or by other methods. The object and natural effect of such rules or customs is to give notice of an unusual danger caused by the presence of missed holes in the place where the oncoming shift is about to work. It serves as a warning to those who are about to enter the place in order that they may use reasonable diligence and extra precaution to determine the location of the missed holes and to guard against the dangers. It appears in this case no such rule was prescribed and no such custom adhered to. The miner who enters the workings unaware of this unusual danger cannot, in reason, be said to assume this additional risk. (*Shannon* v. *Consol., etc.*, 24 Wash. 119, 64 Pac. 169;

*McMillan* v. *North Star*, 32 Wash. 579, 73 Pac. 685, 98 Am. St. Rep. 908; *Polaski* v. *Pittsburg*, 134 Wis. 259, 114 N. W. 437, 14 L. R. A. n. s. 952.)

[8] The appellant in this case, by its pleadings, set up a release as having been signed by respondent subsequent to the accident and at a time at which he was being treated by specialists in the city of San Francisco. This release, in the form of a signed instrument, was introduced in evidence in behalf of the appellant. It is our judgment that, in view of the substantial conflict of evidence surrounding the signing of this instrument, the jury was warranted in finding, as it did by its general verdict, that the respondent should not be bound by the release. The evidence tended to establish that the release was signed in the office of Mr. Jussen, the general superintendent of the appellant company, in the city of San Francisco; that there were present at the time of the signing Mr. Jussen, the superintendent, and a representative of a casualty company; that the respondent was alone, although it was established by the evidence brought out on cross-examination of respondent's witnesses, and also by the direct evidence of appellant's witnesses, that in all business transactions, other than that of the signing of this instrument, respondent had transacted business by and through his wife. Moreover, it is established that, at the time of the signing of this instrument, the respondent could not read, and that his hearing was materially impaired by reason of the injuries previously sustained. Notwithstanding the fact that the representatives of the appellant company had on former occasions dealt with the respondent by and through his wife in all matters pertaining to his injuries and treatment, on this particular occasion it appears that Mr. Jussen, the superintendent of the company, called the respondent, Peterson, to his office in the absence of Peterson's wife, and requested him to sign an instrument, which, according to the testimony of Mr. Jussen and Mr. Lloyd, had been prepared in the office of the casualty company prior to the meeting at which the

respondent signed the same, and was prepared by the representative of the casualty company prior to any consultation or meeting with respondent.

[9] It appears from the record in this case that the respondent, after being treated in the hospital in San Francisco for the injuries sustained, returned to Blair, Nevada, on or about the 3d day of September, 1911, and continued his employment with the respondent company, and that he was assigned to a position running a compressor and continued in such employment until the middle of April, 1912.

There are many assignments of error contended for by appellant in this case applicable to the rulings of the court made as to the admissibility of testimony. In view of the fact that it is our judgment that this case must be reversed by reason of a ruling of the trial court hereafter discussed, we shall take up but one of these assignments.

During the course of the trial, the witness Meyers was produced on behalf of the appellant, and the proceedings applicable to appellant's assignment No. 25 are as follows:

"Q. (By Mr. Platt)—Did you ever have a conversation with Mr. Peterson at any time subsequent to the accident? A. I talked to him about it afterwards; yes.

"Q. And where was that conversation? A. In the compressor room.

"Q. Will you please tell us where, as near as you can remember? A. By the stove there.

"Q. About what time was it? A. Along in the evening, probably half-past 7 or 8 o'clock.

"Q. In what month, day of the month, as near as you remember? A. I think it was in September, some time; I don't remember.

"Q. Of what year? A. 1911.

"Q. And what was Mr. Peterson doing in the compressor room at that time? A. Running the compressor.

"Q. What was that conversation?

"Mr. Hairston—I will ask what his purpose is. Do not know whether it is relevant or not.

"Mr. Platt—The purpose of this conversation is to show

that Mr. Peterson, by his own declaration, did not hold
Mr. Meyers or the defendant company liable for this
accident.

"Mr. Hairston—Object on the ground it is immaterial,
irrelevant, and incompetent, and has nothing to do with
this cause of action.

"Mr. Platt—I would like to make the offer a little more
specific.   We make this offer for the following reasons:
First, to show that this action was instituted in bad faith,
with the knowledge upon the part of the plaintiff, when
it was instituted, that he himself knew that Mr. Meyers,
the shift boss, and the defendant company was not
responsible for the injury and that he, himself, was
responsible; second, we offer it for the purpose of contra-
dicting any manner of evidence or imputed evidence of the
negligence of the defendant company, and in sustaining
the contention of the defendant's answer that the alleged
injury was not caused by and through the contributory
negligence of the defendant; and we offer it, in the third
instance, to contradict and impeach the testimony of the
plaintiff's witnesses tending to show negligence upon the
part of the defendant company.   We offer it as a part of
the *res gestæ* of this action.   We offer it as a declaration
made by the plaintiff himself to an employee of the com-
pany, which employee was engaged as a shift boss in the
employ of the defendant company at the time of the acci-
dent, and which declaration contradicts flatly the declara-
tion set up in the complaint in this action.   We introduce
it for the further reason that it is a complete and adequate
defense to this action.   That is why we offer it.

"Mr. Miller—Argues.

"Mr. Platt—I don't desire to argue it;  I will take a
ruling on it.

"Mr. Hairston—Argues.

"The Court—The offer is denied.

"Mr. Platt—Exception upon the grounds stated in the
offer, without repeating the grounds separately and
distinctly.

"Q. Now, Mr. Meyers, did you have a conversation
with Mr. Peterson in the month of September, 1911, in

which he stated to you that he recognized that you or the company were not responsible for that accident?

"Mr. Hairston—Object to that as leading, suggestive, and incompetent.

"Mr. Platt—If the court please, we desire the record preserved by. asking a direct question in support substantially of the offer we made.

"The Court—Sustain the objection.

"Mr. Platt—Take an exception on the grounds stated in the original offer.

"Q. Now, in order, if the court please, that I may get a ruling on the question directly in relation to the ruling on the offer we have made, I desire to ask this man: Mr. Meyers, state whether or not you. had a conversation with Mr. Peterson concerning the subject-matter of this action at any time subsequent to the time of the accident.

"Mr. Miller—Object.

"The Court—I will allow that question.

"Q. Just answer the question 'Yes' or 'No.'  A. Yes, sir.

"Q. When was that conversation?

"Mr. Miller—Object; incompetent, irrelevant, and immaterial.

"Mr. Platt—Take your honor's ruling, if the court please.  We made the offer, and we want to get a ruling of the court now.  We desire to ask the question under the objection of counsel, in order that we may get the ruling on the question we ask.

"Mr. Miller—Same objection; irrelevant, incompetent, and immaterial.

"The Court—Sustain the objection.  When you state what is the purport of the conversation.

"Mr. Platt—I gave your honor the purport of the conversation.

"The Court—Sustain the objection.

"Mr. Platt—We ask an exception upon the grounds stated in the offer, which we don't desire to repeat, and which we will consider now repeated in *hæc verba.*

"Mr. Miller—All right.

"Mr. Martinson—And on the further ground that the purported—that the questions and the offer made would indicate that there was an admission on the part of the plaintiff to the same effect, going to the merits of this controversy."

The offer of evidence, as indicated by the record, and as declared by counsel for appellant in his statement to the trial court, was that of a declaration against interest, made by respondent to the witness Peterson. This was clearly indicated, in our judgment, by the statement made by counsel, wherein he set forth to the trial court the reasons upon which he based the offer, and indicated thereby the nature of the answer which he expected from the witness; the witness having already testified that a conversation had taken place.

[10] The offer of the testimony made by appellant in the court below was clearly based upon the rule that whatever a party voluntarily admits to be true, though the admission be contrary to his interests, may reasonably be taken for the truth. Where a man voluntarily admits a fact, which fact and which admission is contrary to his interests, ordinary motives that sway or form human conduct suggests belief in his utterances. Such declarations or utterances, although made outside of the direct proceedings, and without the sanction of an oath, are nevertheless sufficient, when the proper foundation is laid for their admission, to imply a reasonable presumption of their truth—at least until there is a showing to the contrary.

In the case under consideration, the respondent, by his pleadings, alleged the negligence of the plaintiff company, and by his own testimony, and by the testimony of witnesses offered in behalf of his contention, circumstances were related tending to establish the fact that the accident was caused by reason of the negligence of the appellant. The issues were squarely joined in this case on the question of negligence. It was the province of appellant, under the pleadings in the case, and in

view of the issues, to disprove negligence or liability for the accident out of which respondent received the injuries. Any voluntary statement that respondent might have made subsequent to the accident as to the cause of the accident, or as to the agencies that brought about the accident, or as to his own responsibility or acts in bringing about the accident, if such were made, might be produced by and from the party or parties to whom such utterances were made, on behalf of the contention of appellant that the accident was not brought about by its negligence.

Speaking upon this subject, Professor Wigmore in his work on Evidence says: "Just as a witness's testimony is discredited when it appears that on another occasion he has made a statement inconsistent with that testimony, so also the party is discredited when it appears that on some other occasion he has made a statement inconsistent with his present claim. This is the simple theory upon which a party's admissions—of the informal sort, which might better be termed '*quasi* admissions'— are every day received in evidence on behalf of his opponent. The witness speaks in court through his testimony only, and hence his testimony forms the sole basis upon which the inconsistency of his other statement is predicated. But the party, whether he himself takes the stand or not, speaks always through his pleadings, and through the testimony of his witnesses put forward to support his pleadings, hence the basis upon which may be predicated a discrediting inconsistency on his part includes the whole range of facts asserted in his pleadings and in the testimony relied on by him. Thus, in effect, and broadly, *anything said by the party may be used against him as an admission,* providing it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony." (Wigmore on Evidence, vol. 2, sec. 1048; Jones on Evidence, sec. 235; Ruling Case Law, vol. 1, p. 468.)

"Admissions of a party against his interest are

competent in negligence cases, as in other cases," says
Mr. Thompson in his Commentaries on the Law of Neg-
ligence, and this same declaration is indorsed in Elliott's
Treatise on the Law of Evidence. (Thompson's Com-
mentaries on the Law of Negligence, vol. 6, sec. 7738;
Elliott on Evidence, vol. 3, sec. 2510; *Brown* v. *Calumet
River*, 125 Ill. 600, 18 N. E. 283; *Welti* v. *Cohen*, 157 App.
Div. 65, 141 N. Y. Supp. 670; *Smith* v. *Smith*, 140 N. W.
659; *Nirsley* v. *Brulaker*, 192 Pa. 388, 43 Atl. 967.)

In the case of *Helman* v. *Pittsburg Co.*, 58 Ohio St. 400,
50 N. E. 986, 41 L. R. A. 860, the Supreme Court of Ohio,
in passing upon this question, said: "The defendant,
therefore, has the right to introduce any evidence which
tends to weaken or disprove the facts necessary to be
established to make out the plaintiff's case; *i. e.*, the facts
constituting the conditions upon which the action is
given by the statute. If death had not ensued, the
deceased could not recover damages for his injuries, if
it should be established on the trial that his injuries were
caused by his own carelessness or negligence; and his
statements after the injury, and while in his right mind,
tending to show that the injury was caused by his own
negligence and carelessness, would be good evidence
against him in an action brought in his own behalf
during his lifetime."

[11] The voluntary declaration or statement of a
person injured, at any time after the accident, is proper
evidence to go to the jury, and, so far as it may be treated
as an admission, it should be considered in connection
with all the other circumstances in the case, and in the
light of all the circumstances under which it is given.
Its weight and significance is for the jury. (*Perigo* v.
*C., R. I. & P.*, 55 Iowa, 326, 7 N. W. 627; *Sterling* v. *De
Laune*, 47 Tex. Civ. App. 470, 105 S. W. 1169.)

In the case of *Walker* v. *Brantner*, 59 Kan. 117, 52 Pac.
80, 68 Am. St. Rep. 344, the superintendent of the rail-
road on which deceased received his injuries was called
as a witness for the defendant company, and stated,
among other things, that he had a talk with Brantner,

the deceased.  He was then asked the question: "I will ask you what he said with reference to what he did about looking for an engine on the Frisco after he had stopped his engine and whistled?"  This question was objected to by plaintiff, on the ground that it was incompetent.  This objection was sustained, and the company offered to prove certain statements made against the interest of the deceased subsequent to the accident.  The objection to the offer was sustained, and the testimony excluded.  The Supreme Court of Kansas, in passing upon the question, said: "It may be that some of the statements which the defendant claimed it would prove were in the nature of expressions of opinion, or deductions from other facts; yet, being the statements of Brantner (the deceased) with reference to the occurrence, they were admissible as declarations against interest.  At the time the statements were made, Brantner alone had a cause of action against the railroad company for the injury."

In the case of *Gulzoni* v. *Tyler*, 64 Cal. 334, 30 Pac. 981, the Supreme Court of California said: "The evidence of what the plaintiff said when asked whether he blamed anybody on the boat should not have been stricken out.  Evidence of what he said in regard to the occurrence was admissible for the defense.  If he expressed an opinion as to who was to blame, the defendants were entitled to have the benefit of it."

In the case under consideration, the question propounded to the witness Meyers called for a statement as to the conversation between the witness and the plaintiff, Peterson.  Counsel for appellant, in his offer and statement made to the trial court, set forth, summarily at least, what he expected to prove by the witness.  It was to the effect that the plaintiff had expressed the knowledge to the witness Meyers that the defendant company was not responsible for his injuries, and, moreover, that he had expressed himself to the witness Meyers to the effect that he himself was responsible.  It was offered by the appellant as a declaration made by the

plaintiff himself against his own interest, at a time subsequent to the commencement of the action, and while he was in the employ of the appellant company. It might be contended that the statement, if such was testified to by the witness Meyers, would have little or no effect with the jury, but its weight and .effect are matters upon which we have no right to pass. The jurors alone were the ones to weigh the evidence for whatever it might have been worth, but, whatever its weight might have been, or whatever effect it might have had, the defendant was entitled to it. If at that time the plaintiff, respondent herein, voluntarily made statements contrary to the position taken by him at the trial and contrary to the declarations in the complaint, or contrary to the theory of the plaintiff's case, the defendant was entitled to offer such statements or declarations in evidence, where the proper foundation was laid.

In the case of *Holman* v. *Boston Co.*, 20 Colo. 7, 36 Pac. 797, it appears from the statement of facts, as set forth in the opinion, that an offer very similar to the offer made to the trial court in this case was made by the defendant, and the Supreme Court of Colorado, speaking through Mr. Chief Justice Hayt, said: "The evidence offered was proper, and should have been admitted. The witness was a party plaintiff to the action, and his admissions were competent evidence against him. As the defendant was not permitted to testify in reference thereto, we must assume that he would, but for the erroneous ruling of the court, have testified that this plaintiff, at the time, admitted that the fire occurred without fault on the part of defendant. Testimony of such an admission was proper as substantive evidence, and should have been allowed to go to the jury. * * * And we are unable to say that the verdict upon the last trial might not have been different had the rejected evidence been admitted. Much or little weight might have been given it in the discretion of the jury, or its effect might have been entirely overcome by other evidence; nevertheless it was competent, and should have been submitted

to the jury." (*Grand Lodge* v. *Taylor,* 24 Colo. App. 106, 131 Pac. 783.)

This court, speaking through Mr. Chief Justice Lewis in the case of *Rollins* v. *Strout,* 6 Nev. 150, speaking of admissions in general, said: "The general rule is that, when the proof of acts done by a person is admissible, any declarations accompanying them which tend to explain such acts or the motives controlling them are likewise admissible. The rule is certainly not confined to such declarations as may be made against the interest of the person making them. Such declarations are received under another rule and for different reasons. When made against interest, they are received even when not accompanying such acts."

While the decision in the Rollins-Strout case, *supra,* was not strictly in point as being applicable to the case under consideration, nevertheless this court, in the last sentence of the above quotation, indorsed the general rule applicable to admissibility of admissions against interest, and, while the court in that case did not go into the subject at length, it being one not essential to the decision, the rule applicable to the admissibility of evidence of that character was asserted, even though it might be considered in the form of *obiter dicta.*

[12–13] The offer in this case, made by the appellant in the trial court, being that of a statement of the party plaintiff against his own interest is admissible, upon the principle that every prior statement of a party to an action exhibiting any inconsistency with his present claim, or theory upon which he presumes to maintain his case, tends to throw doubt upon it; this regardless of whether, at the time he was speaking, he made the utterances in his own favor or against his own interest. It has been asserted on authority that an admission against interest is equivalent to affirmative testimony for the party offering it. This may be true only as to admissions which presume to state facts against the declarant's interest at the time of stating them. But, whatever may be the weight or significance to be given

to admissions against interest, or declarations inconsistent with the contention of the party who makes them, it is nevertheless a rule that, when a party to a civil action has made an admission of fact material to the issue, it is admissible against him.   The weight and consideration to be given to such admission or declaration, whether great or *nil*, is for the jury.  (Jones on Evidence, 2d ed. c. 9.)

While it is true that courts generally hold that admissions or declarations against interest are not conclusive as to the effect of what the declarant stated, yet such admissions should be considered in connection with the circumstances, and given such weight as they are entitled to in deciding whether or not the party spoke with mature consideration and in regard to his legal rights, or whether he meant the defendant was not to blame for any lawful intention to injure him.  (*Cooper* v. *Central Rd.*, 44 Iowa, 134; *Central Rd.* v. *Mooseley*, 112 Ga. 914, 38 S. E. 350.)

While it is true in this case that, if the respondent did make a declaration against his interest or against his general position, as assumed in his pleadings and by his evidence in the trial, the jury would not have been bound to find that the evidence in that respect was conclusive of his negligence.   But, however this may be, the evidence, if such there was, should have gone to the jury.  (*Martinson* v. *National Co.*, 166 Mass. 4, 43 N. E. 513; *Copley* v. *Union Pacific*, 26 Utah, 361, 73 Pac. 517; *Binequicz* v. *Hagland*, 103 Minn. 297, 115 N.W. 271, 15 L. R. A. n. s. 1096, 14 Ann. Cas. 225.)

Counsel for respondent contend that the offer was not in proper form to constitute a good tender of evidence, and they state: "This is not in proper form to constitute a good tender of evidence.   To make it a good tender, it ought to have stated the facts offered to be proved, and not to state the legal effect of the facts offered to be proved.   The alleged tender was lacking in not being specific, it was too general in character, and it would be

difficult, if not impossible, for the court to understand what evidence was offered."

[14] As will appear from the record, however, the trial court did not sustain the objection on this theory. It is manifest that the trial court sustained the objection, not by reason of the form of the offer, or the manner in which the offer was made, but rather by reason of the purpose of the offer. The record, as heretofore quoted, discloses that the attorney for appellant stated to the court:

"Take your honor's ruling, if the court please. We made the offer, and we want to get a ruling of the court now. We desire to ask the question under the objection of counsel, in order that we may get a ruling on the question we asked.

"Mr. Miller—Same objection; irrelevant, incompetent, and immaterial.

"The Court—Sustain the objection. When you state what is the purport of the conversation."

From this it will appear that the court sustained the objection of counsel for respondent not by reason of the form of the offer, but by reason of the intendment of the offer, thereby holding that its purpose was subject to the objection interposed. From this it further appears that the court thoroughly understood the object and purpose of the offer, and from the statement made by counsel for appellant to the trial court as to the scope and substance of the offer, and the purpose and object of the same, it is manifest that the court understood what evidence was offered, and ruled it out by reason of its purpose.

Respondent further contends that it was not error on the part of the court to rule against the admission of the offered evidence, inasmuch as it was not shown definitely and specifically to be pertinent to the issues involved. To this it may be said that the major issue involved in this case was the negligence of the appellant company, and any element of competent evidence going directly

to that issue was admissible, where a proper foundation was laid for its admission.   Counsel for respondent raise no question in their objection to the foundation laid for the admission of the testimony.   Moreover, it is our judgment that the foundation was properly laid and the offer was made in good season.

[15] Unless an error complained of is such as to substantially affect the rights of the complaining party to such an extent that it might reasonably contend and assert that, were it not for the error complained of, a different result might reasonably have been expected, it would be harmless.

[16] Where the error complained of was one having to do with the admissibility or nonadmissibility of testimony, and especially where the testimony goes directly to the issue or issues in the case, its weight and significance being for the jury to determine, a ruling upon that point is so vital that an error made in that respect is, in our judgment, one of sufficient importance and consequence to demand reversal.

The judgment and order appealed from should be reversed, and the cause remanded for a new trial.

It is so ordered.