# THE STATE OF NEVADA, RESPONDENT, *v.* R. B. JONES AND JOHN NERY, APPELLANTS.

CRIMINAL LAW — SEPARATION OF JURY.   Where, after the retirement of the jury in a criminal case, one of them left the jury room in company with the officer in charge, and visited his residence, about five hundred yards distant, and while passing through the street was spoken to by several persons ; but there was no showing that anything was said in his hearing about the case, or that the officer had not been constantly at his side : *Held*, that as there was no evidence of any opportunity of tampering with the juror, there was no ground for setting aside the verdict.

SEPARATION OF JUROR IN CHARGE OF OFFICER — PRESUMPTION.   Where a juror in a criminal case separated from his fellows, but was shown to have been in the charge of a proper officer : *Held*, that a presumption that he could have been tampered with during such separation was inadmissible.

CONDUCT OF JURY — DRINKING SPIRITUOUS LIQUOR.   The mere drinking of spirituous liquor by a juror, when not furnished by the prevailing party, is not such irregularity or misconduct as will vitiate a verdict.

AMENDMENT VI OF U. S. CONSTITUTION NOT APPLICABLE TO STATE TRIBUNALS.   The provision of Amendment VI of the United States Constitution, that accused persons are entitled to be confronted with the witnesses against them, is applicable only in the federal courts, and is in no wise a restriction upon the powers of the states, or applicable to state courts.

DEPOSITIONS IN CERTAIN CRIMINAL CASES.   The statute providing for depositions, under certain circumstances, in criminal cases, (Stats. 1867, 125, Secs. 151 and 171) is not amenable to the objection of being opposed to the United States constitution.

OFFER OF DEPOSITIONS ON CRIMINAL TRIAL — PRELIMINARY PROOF.   When a deposition in a criminal case is offered in evidence, the offer should be accompanied with proof that it was taken in conformity with the statute ; and if the proper objection be made, it should not be admitted without such preliminary proof.

OBJECTION TO DEPOSITION IN CRIMINAL CASE — WHEN TOO GENERAL.   Where a deposition in a criminal case was offered by the prosecution, and defendant objected that it was "incompetent evidence" : *Held*, that such objection was too general to reach the point of failure to show that the deposition was taken in a case authorized by the statute.

OBJECTIONS SHOULD BE SPECIFIC AND POINTED.   In criminal, as well as in civil cases, objections should be so specific that the attention of the court may be directed to the exact point, so that the objection may be obviated if it be of a character which admits of remedy.

INDICTMENT FOR GRAND LARCENY — ALLEGATION OF "WITHOUT AUTHORITY OF LAW."   Where an indictment for grand larceny alleged that defendant "feloni-

State *v.* Jones.

ously did steal, take and lead away" the property, &c.: *Held*, that it was sufficient that the essential facts constituting the grand larceny were charged, without a special allegation that such acts were "without authority of law," or any equivalent allegation.

CRIMINAL LAW — ORAL REMARKS OF JUDGE TO JURY — REQUEST TO AGREE.— Where the judge, in a criminal trial, orally stated to the jury that, as the trial had occasioned great expense, and a large venire had been exhausted and much time taken up, and it was doubtful whether another jury could be procured, he would give an instruction upon the point on which they had been in doubt the night before, and it might aid them in making up a verdict; and he then read an instruction: *Held*, that the oral statement was in no sense a charge or instruction, and not open to objection for being oral; nor was it objectionable as calculated to encourage the jury to find an inconsiderate verdict.

TRIAL OF ACCESSORIES BEFORE THE FACT — CHARGE AS TO PRINCIPAL. Where, on a trial for grand larceny of horses, the evidence tended to show that they had been stolen either by Jackson or by Big Ben, and that defendants were accessories before the fact; and the court charged that, "The defendants might be found guilty, regardless of the guilt or innocence of Big Ben"; *Held*, it appearing that other portions of the charge clearly showed what constituted an accessory before the fact and what was necessary to justify his conviction, that the instruction was unobjectionable.

GRAND LARCENY—INSTRUCTION IGNORING THAT ACCESSORIES MAY BE GUILTY AS PRINCIPALS. Where instructions in a grand larceny case ignored the fact that defendant may have advised and counseled the felonious taking by a third person, and asked an acquittal unless it appeared that defendant personally took the property: *Held*, properly refused.

TRIAL OF ACCESSORY BEFORE THE FACT — PROOF OF GUILT OF PRINCIPAL NOT NECESSARY. Under our statute it is not essential to the conviction of accessories before the fact, that the prosecution first prove the guilt of the principal; it is only necessary in such case to show that a crime has been committed, and that defendant, if present, aided and assisted, or if not present, advised or encouraged it.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The defendants were indicted for the stealing on June 17th, 1871, of two horses from J. R. Cunningham, and one horse from James Barney, at Pioche City, in Lincoln County. It appears that they were arrested with the horses in their possession some fifteen miles from Pioche, and that they were at the time on their way towards Idaho, having started before daylight. They claimed to have purchased the animals from Charles Jackson, and a paper,

27

purporting to be a bill of sale, signed by a person of that name, to Jones, was offered in evidence. One " Mormon Ben " or " Big Ben" had been in their company previous to the arrest, but had ridden on ahead at the time of the arrest, and was not taken. The horses were stolen the previous nigl.t at a place called Dry Valley, near Pioche, and there was evidence showing that " Big Ben " had been there the evening before. There was evidence tending to show that defendants had freely talked at Pioche for several days before their departure of their intention of going to Idaho, but there was no testimony explaining who Charles Jackson was. One witness, who professed to be well acquainted in Dry Valley and the surrounding valleys, and who knew the horses and " Big Ben," said that he knew of no one by the name of Jackson in the county.

In the course of the trial, the prosecution showed that a subpœna had been issued for A. A. Dolliff, who had assisted in the arrest; that he could not be found; and that he was thought to be out of the state. His deposition, taken before a justice of the peace, was then offered and read in evidence against defendants' objection that it was not competent testimony.

The instructions asked by the defendants and refused by the court, as stated in the opinion, were as follows:

1. If the jury believe, from the evidence, that the defendant, R. B. Jones, obtained the horses mentioned in the indictment from some person in the town of Pioche, on the night of the alleged larceny, then the jury should find a verdict of not guilty.

2. That if they believe, from the evidence, that the defendants were in the town of Pioche at the time the horses were alleged to have been taken from the pasture in Dry Valley and brought to Pioche, and did not assist in taking them, then you must find a verdict of not guilty.

3. That a man cannot be guilty as an accessory unless there is a principal who is guilty, and the state must prove the guilt of the principal; for, in the nature of things, a man cannot be holden for procuring an act to be done, or for receiving the doer knowing of the act, unless it were in fact done, and also proven by competent testimony.

4. The court instructs the jury that the jury must .decide this case upon the sworn testimony of witnesses who have been examined in their presence, and that the jury must find the defendants either guilty or innocent from the testimony so given ; and that outside. circumstances, referring to the acts of third persons, and impressions that the jury may have as to the acts of a person other than the defendants, should not have any weight upon the jury. The defendants are on trial, charged with the commission of certain acts ; and if the jury believe, from the testimony, that some person besides the defendants committed the offense charged in the indictment, then the jury should render a verdict of not guilty.

5. That they are not to take into consideration the acts of " Mormon Ben," or any third person ; and that the defendants are liable for their own acts alone, and are not liable for the acts of any other person or persons, unless the testimony shows that such third party acted by direction of the defendants. Also, that it is a principle well settled in law, that, in cases of doubt, the jury should acquit the defendants, because it is better that ninety and nine guilty men, should be acquitted than that one innocent man should be convicted. Unless the jury are satisfied, from the testimony, that the defendants are guilty, as charged in the indictment, and so proven guilty, beyond all reasonable doubt, the defendants are entitled to the benefit of the doubt, and the jury should acquit the defendants.

The defendants having been convicted, as charged, and. a motion for new trial having been overruled, they were sentenced to imprisonment at hard labor in the state prison for five years.

*Ellis & King*, for Appellants.

I. The drinking of any spirituous liquor by the jury, however small the quantity, is of itself ground for a new trial, without inquiry into the abuse and injury worked in the particular instance. *People* v. *Douglas*, 4 Cow. 26 ; *Brant* v. *Fowler*, 7 Cow. 562 ; *Gregg* v. *McDaniel*, 4 Harrington, 367 ; *People* v. *Ransom*, 7 Wend. 417 ; *Ryan et al.* v. *Harron et al.*, 27 Iowa, 494 ; 1 American Reports, 302.

II. The admission of the deposition of Dolliff in evidence was

error prejudicial to defendants. They were entitled to be confronted with the witnesses against them. U. S. Const., VI Amendment.

III. The indictment does not charge the acts of the defendants to have been "without authority of law," or any equivalent allegation, as "unlawfully" or "unlawful." 1 Archibald's Criminal P. and P. 92, Note 1 and citations.

IV. The oral instruction or address of the judge to the jury was calculated to mislead them. It was framed to impress upon them that the avoidance of further time and trouble in the cause had become their chief duty and the only obligation resting upon them, thus leading them away from the consideration of the issues and proofs in the case. This instruction, remarks or address, was error, because oral, and also as misleading the jury. `State v. Ah Tong, ante, 148; State v. McGinnis, 5 Nev. 37; State v. Duffy, 6 Nev. 138.

V. The instruction concerning the guilt or innocence of "Big Ben" was error. It was a charge in respect to a fact. The charge is not "regardless of Ben's conviction," but regardless of a certain fact relating to him, upon which, in truth, defendants' guilt or innocence might entirely depend.

J. C. Foster and W. W. Bishop, also for Appellants.

L. A. Buckner, Attorney-General, for Respondent.

People v. Lee, 14 Cal. 510; People v. White, 34 Cal. 183; People v. Martin, 6 Cal. 477; Williams v. Gregory, 9 Cal. 76.

By the Court, LEWIS, C. J.:

The defendants were indicted, tried and convicted of grand larceny for the stealing of three horses. A motion for new trial was regularly made, denied and an appeal taken, upon which several errors are assigned; the first, being an illegal separation of a juror named Wilkin from his fellows, after the submission of the case. This assignment is founded upon an affidavit setting out substantially that the juror, in company with the officer placed in charge, left the jury room and visited his residence some five hundred yards from

the jury room; that whilst passing through the streets several persons spoke to him; but there is no showing whatever that anything was said in his hearing respecting the trial, nor that the officer in whose charge he appears to have been was not constantly at his side.   There is, therefore, no evidence that there was an opportunity, or even a possibility of tampering with the juror, unless it can be presumed that it could be done whilst he was in the immediate presence of the officer; a presumption totally inadmissible.

The rule upon this head is now well settled to be that the separation of the jury, even though unauthorized by the court, when there is no opportunity of abuse, is not a ground for setting aside the verdict.   2 Graham & Waterman on New Trials, 502.   Here the affidavits on behalf of the prisoners warrant the conclusion that the juror was constantly attended by the sworn officer of the court. Under such circumstances, no case can be found holding that the separation is illegal.   Indeed, it can hardly be said that there is a legal separation, where one juror in charge of an officer leaves the others, who are left either under lock and key, or under the immediate charge of another officer.   The Supreme Court of New Jersey, *State* v. *Cucuel*, 31 N. J. 257, sum up a very able discussion of this question in this manner: " From the foregoing view of the topic discussed, it will be perceived that it was entirely competent for the court to authorize the jury, or any of them, to visit their homes in the company of one of its sworn officers.   So it was equally legal for the court to permit, under the same supervision, the jury or any of its members to ride or walk out for exercise.   *All that the defendant can demand as a right is that the court should not sanction the withdrawal of the jury, in whole or in part, during the trial from the presence of the court or its officers.*"   There is no showing here that this separation, if it might be so called, was not authorized by the court.

But if this can be called a separation, that of itself is not such irregularity as will vitiate a verdict.   Although so held in a few cases, the great weight of authority is the other way : hence, if it be shown that there was no possibility of prejudice to the complaining party resulting from such separation, it will not warrant a reversal of the verdict.   See the cases on this point fully collated

in 2 Graham & W. on New Trials, 534. It is true, if there be the least suspicion of abuse or tampering where there is such separation, the verdict will be set aside. But in this case there is nothing shown upon which to ground any such suspicion ; and the affidavit of the juror is pointed that he had no conversation with any person respecting the trial. Such affidavit is by the great majority of the courts received to rebut any suspicion of abuse or tampering, and is undoubtedly the better rule. 2 Graham & W. 515.

It may be conceded, that if the party complaining shows such separation as would afford even an opportunity of abuse, that may be sufficient to throw the burden of showing no abuse on the other side. In this case we think there was really no legal separation, and if there were, it is shown by the state that nothing prejudicial to the defendant resulted from it ; and thus the case is brought directly within the rule of the general current of decisions, which is that the verdict will not be interfered with.

The second assignment is, the misconduct of one of the jurors, defendant claiming that he became intoxicated while deliberating on the verdict. The mere drinking of spirituous liquors, when not furnished by the prevailing party, is now pretty well established not to be such irregularity or misconduct on the part of the jury as will vitiate a verdict. And so we have held. *Richardson* v. *Jones et al.*, 1 Nev. 405. It became necessary, therefore, for the defendant to show that the juror drank so much as to produce intoxicating effects upon him, thereby rendering him incapable of considering the case with that clearness, impartiality and calm consideration which is expected of every juror in his deliberation upon a verdict. Whether the juror drank so much as to affect his mental faculties in the least, was a question upon which there was a decided conflict of testimony. The question of the juror's condition was therefore one of fact, with which this court has nothing to do, its jurisdiction being limited to questions of law alone. We may say, however, that a judge at *nisi prius* should never hesitate to set aside a verdict in a criminal case, where there is even a suspicion that any juror was in the least affected by intoxicating

liquor during the progress of the trial, or the deliberation upon the verdict.

The third assignment is, that the court below erred in admitting a deposition in evidence against the prisoner—counsel arguing that, under the constitution of the United States, Art. VI of the amendments, the prisoners were entitled to be confronted by the witnesses against them. But this article of the constitution is applicable only to the federal courts, and is in no wise a restriction upon the power of the states, and in no respect applicable to state courts. *Barker* v. *The People*, 3 Cowen, 701. It was entirely competent for the state, therefore, to make provision as it has done, that in certain cases and under certain circumstances, depositions may be received against the prisoner. Sections 157 and 171 as amended in 1867, page 125, of statutes of that year. When a deposition is offered, it is true, the person offering it should accompany it with proof that it was taken in conformity with the statute; and, if the proper objection be made, it should not be admitted until such preliminary proof is made. In this case the only objection interposed was, that the deposition was "incompetent evidence." Such objection was altogether too general to reach the failure on the part of the prosecution to make the preliminary proof that the deposition was taken in accordance with the statute. Had the objection been pointed to, and specified that, as the ground upon which it was made, the state might perhaps very readily have supplied the omitted evidence. But under the general objections here made, it would be impossible to understand that it was intended to rely upon the point that this preliminary proof was not made.

In criminal as well as in civil cases, the objection should be so pointed that the attention of the court below may be directed to the exact point, so that the objection may be then obviated, if it be one of that character. *Kite* v. *Kimball*, 10 Cal. 277; *Martin* v. *Travers*, 12 Cal. 244; *Dreux* v. *Domec*, 18 Cal. 83; *Leet* v. *Wilson*, 24 Cal. 398. The authorities require the objecting party to place his finger upon the point of objection. If the objection be one which might have been obviated or remedied, as in this case, and the objection is not sufficiently specific, it will not afterwards avail the party. The objection here was too general to entitle the

defendants to rely upon the failure to make the proof preliminary to the admission of the deposition; because, if specified at the time, it might have been cured. See also *Sharon* v. *Minnock*, 6 Nev. 377.

It is next argued that the indictment does not conform to the requirements of the statute, and is defective in not charging the "acts of defendants to have been without authority of law, or an equivalent allegation." True, the indictment does not contain the allegation which it is claimed it should, to make it conform to the statutes. It, however, contains all the essential facts constituting the larceny—facts which show that the taking was without authority of law, and was unlawful—and that is sufficient. It is charged that the defendant feloniously did steal, take, and lead away the property of the complaining witnesses; particularly describing it. This sufficiently shows the fact that the taking was contrary to law, and fully obviates the objection made to the indictment.

Again, it is argued that the judge below erred in addressing the jury in this manner: "The court is not desirous of punishing the jury, but as it is a great expense to the county, and a venire of seventy-five jurors has already been exhausted, and this trial has taken up a great deal of time already, and it is very doubtful if another jury can be got in the county to try these men, I will give you an instruction upon the point on which you were in doubt last night, and it may aid you to make up a verdict." This address was delivered orally, and was excepted to by counsel.

The objection urged against this is, that it is an oral charge, and second, that it had a tendency to prejudice the defendant by urging the jury to avoid further deliberation, or careful consideration of the case, and agree upon a verdict.

The address is not open to the first objection, because it is in no sense a charge. It was not a statement of the law governing the case, nor an instruction in any manner directing the jury how to find the verdict. This was no more a charge than that which came in question in the case of the *People* v. *Bonney*, 19 Cal. 426, where the jury were told orally that their verdict was not in proper form, and that they must retire and designate in the verdict in which degree they found the prisoner guilty; and it was held to be no error because not a charge. Nor can we perceive how these remarks

of the judge were calculated to encourage the jury to find an inconsiderate verdict.   The law of the case had been previously given to them, and they were fully aware of the gravity of the duty imposed upon them.   Clearly, the immediate tendency of these remarks was simply  to induce a more careful  and anxious consideration of the case—to let the jury understand that they should make an effort to agree upon a verdict simply, but not contrary to the evidence, law, or the rights of the defendants.   No such conclusion can properly be drawn from  the remarks.   Nor would it be warranted when taken in connection with the instructions given wherein the rights of the defendants are fully guarded.   It is true such remarks had better not be made, but still in this case we are unable to see that the defendant could have been prejudiced by what was said.

It is further argued that the court erred in charging the jury that " the defendants might be found guilty regardless of the guilt or innocence of Big Ben."   Unquestionably this was correct.   The evidence tended to show that the horses were stolen either by the man Jackson or Big Ben, which of the two does not satisfactorily appear, and that the defendants were accessories before the fact. This appears to have been the theory of the prosecution.   Now, if the man Jackson stole the property, and the defendants were connected with him, they could be found guilty, regardless of whether Big Ben had any connection with the matter or not.   This proposition is self-evident, and this is all that the instruction amounts to when taken in connection with the other portions of the charge, which clearly instruct the jury as to what constitutes an accessory before the fact, and what is necessary to justify his conviction. They learned from that charge that it is always essential that there be a principal in the crime, although under the statue of this state it is not necessary that he be convicted of the crime, or that the accessories be indicted as such : for it is expressly provided that they may be indicted and tried as principals.   All that the jury could have understood by the instruction complained of then, was, that although there must have been a principal in the larceny, with whom the defendants should be shown to have been connected, it was not necessary to show that Big Ben was that person.

The refusal to give the instructions asked by defendants was not error, for the reason that the first, second, fourth and fifth entirely ignore the fact that the defendants may have advised and counseled the taking of the horses by some third person, and ask an acquittal, if the jury was satisfied that they did not personally take the property; whereas, there was some evidence tending to show that they may have so " advised or encouraged " the stealing, and thereby become guilty as accessories.

The third instruction was properly rejected because, under the statute of this state, it is not essential to the conviction of accessories before the fact that the prosecution first prove the guilt of the principal. It was only necessary to show that a larceny had been committed, and that the defendants, if they were present, aided and assisted, or if not present, that they advised or encouraged it. The instruction would seem to assume that the principal should be identified and his guilt proven; whereas it is only necessary first to prove the unlawful taking, and then that the defendants had such connection with them as would bring them within the statute. But, if it is to be understood by it that it was necessary for the state to establish the fact that a larceny, or the principal offense, had been committed by some one before the defendants could be convicted as accessories, then, although in that light the instruction might be considered correct, still its refusal is not error, for the reason that the court in another instruction had so given the law to the jury, charging them that it was necessary for them to find that the theft had been committed, that the horses had been feloniously taken, before they could convict defendants, and in another instruction the character of their connection with the larceny was clearly and correctly explained. Hence the refusal of this instruction was not error.

The last assignment of error is that the evidence does not warrant the verdict. There is some evidence tending to that end; enough at least to make their guilt a question of fact, and thus deprive this court of jurisdiction. This may be a hard case; if so, the board of pardons is the proper tribunal to grant relief.

Judgment affirmed.