GEORGIA C. GINNIS, APPELLANT, *v.* MAPES HOTEL CORPORATION AND DOR–O–MATIC, A DIVISION OF REPUBLIC INDUSTRIES, INC., RESPONDENTS.

No. 5958

June 4, 1970                    470 P.2d 135

---

*Howard F. McKissick, Jr.,* of Reno, for Appellant.

*Vargas, Bartlett & Dixon,* and *John C. Renshaw,* of Reno, for Respondent Mapes Hotel Corporation.

*Richard P. Wait,* of Reno, for Respondent Dor-O-Matic.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal in a personal injury action from a jury verdict in favor of respondents (defendants below). We conclude prejudicial error was committed, reverse that judgment and remand the action for a new trial as to respondent Dor-O-Matic. We affirm the judgment as to respondent Mapes Hotel Corporation.

Appellant, Georgia C. Ginnis (plaintiff below), a business invitee in the Mapes Hotel in Reno, Nevada, was caught in an automatic door which closed upon her while she was leaving the hotel, injuring her. The door was designed and manufactured by Dor-O-Matic.

Georgia, her husband and a friend, Mrs. Atkinson, were customers in the casino area of the Mapes when they decided to leave. Georgia's husband left first, followed by Mrs. Atkinson. Both negotiated the first of two sets of automatic doors successfully, and Mr. Ginnis had passed through both sets of doors. As Georgia, who followed Mrs. Atkinson by a few feet, stepped across the threshold of the inner door, it closed on her, knocking her over the rail alongside the door and pinning her to it. Georgia's husband tried to extricate her from the predicament alone, but when he could not force open the door sought help from a hotel cashier, Fred Brocklehurst. Georgia's

husband said it took them both to force the door open. Brocklehurst, a 240-pound man, said he opened the door alone with one hand.

What happened immediately following that event is in dispute. Georgia and her husband both testified a maintenance man carrying a tool box removed the threshold plate and worked on the door's mechanism. The maintenance man denied he had a tool box, removed the plate, or worked on the mechanism, but, with a hotel security officer, simply walked through the door several times, and it functioned properly. The security officer filed an accident report which was later admitted in evidence over Georgia's objection.

Appellant sued respondents upon four theories; negligence, implied warranty, res ipsa loquitur, and strict tort liability. She alleged in her complaint, among other things, that the door supplied by Dor-O-Matic was "created, designed, manufactured, operated, repaired, inspected, delivered and supplied . . . in a dangerous and defective condition and manner."

During the trial, Georgia called William W. Baker, chairman of the engineering design department of the University of Nevada School of Engineering, as an expert witness. He testified that from his investigation of the door and its schematic drawings, the cause of the door closing as it did on Georgia was a malfunction of the safety relay in the door mechanism and that it was a condition dangerous to human safety. He was of the opinion that the design of the automatic door had the inherent capability to do just what it did to Georgia. He described two safety features which could have prevented closing as it did; he said the door could have been equipped with a duplicate control network or "redundant system," or a trip or pressure switch such as is commonly found on elevator doors to prevent them from closing on passengers.

Dor-O-Matic called its engineering vice president, Paul W. Martin, designer of the door in question, as its expert witness. He testified Dor-O-Matic designed, manufactured and sold the door but did not install it or replace any parts in the door after its installation in 1964. He stated his company had received no complaints concerning the operation of this or other doors and that only their competitors insinuated the door was defective. He agreed with Professor Baker that the safety relay must have been responsible for the door's malfunction when Georgia was caught in it.

During the trial, Georgia sought to call two other persons to testify who had been caught in the same door subsequent to

her experience. The court refused the request. Similarly, Georgia offered in evidence 19 repair orders on automatic doors at the Mapes. The court allowed in evidence only three relating to the same door in which she was caught, and refused the others.

In settling instructions, the lower court gave Georgia a res ipsa loquitur instruction against the Mapes Hotel only, refused any instruction on strict tort liability, and refused certain of her instructions on the duty of an invitor to an invitee. Appellant also contends the trial judge was guilty of judicial misconduct and indulged in prejudicial interference by his conduct of the trial.

The issues presented for our review upon this appeal are these:

I.   Whether an instruction should have been given applying res ipsa loquitur to both defendants and not just against the Mapes Hotel?

II.   Whether an instruction on strict liability should have been given?

III.   Whether the instructions on the duty of an invitor to an invitee were adequate under the circumstances?

IV.   Whether the lower court erred in admitting the "accident report" made by the Mapes Hotel security guard because it contained hearsay?

V.   Whether the lower court erred in refusing to allow appellant to have at least two other witnesses testify that they were similarly caught in the same door around the time appellant was injured?

VI.   Whether the lower court erred in refusing to allow appellant to introduce evidence of repairs on the same and similar doors prior to and subsequent to appellant's accident?

VII.   Whether the trial judge was guilty of judicial misconduct and interference?

1.   Whatever might be said about the merits of Georgia's first claim of error that the trial court failed to give a res ipsa loquitur instruction against both Mapes and Dor-O-Matic, it is not preserved for our consideration. A careful review of the record conclusively establishes that Georgia's counsel *withdrew* the res ipsa loquitur instruction against Dor-O-Matic. We will not consider on appeal an instruction not offered to the trial court. NRCP 51; e.g., Otterbeck v. Lamb, 85 Nev. 456, 456 P.2d 855 (1969).

2.   Georgia offered, and the trial court refused, three instructions which would have permttied the jury to consider

the doctrine of strict tort liability against Dor-O-Matic. We think that was error requiring reversal and a new trial.

In Shoshone Coca-Cola Bottling Co. v. Dolinski, 82 Nev. 439, 420 P.2d 855 (1966), we judicially adopted the doctrine of strict tort liability for Nevada in the field of foodstuffs and bottled beverages. We now extend that doctrine to the design and manufacture of all types of products. Suvada v. White Motor Co., 210 N.E.2d 182 (Ill. 1965). In doing so, a plaintiff, in relying upon the doctrine, must still prove his case. As we said in *Shoshone,* "He must still establish that his injury was caused by a defect in the product, and that such defect existed when the product left the hands of the defendant. The concept of strict liability does not prove causation, nor does it trace the cause to the defendant." *Id.* at 443.

In proving a case under that doctrine, adequate and proper standards must be established determining who is liable, the type of harm for which liability exists, and the duration of time over which that liability extends.

In *Shoshone* we said that a manufacturer and distributor of a bottled beverage is liable for injuries caused by defects that existed when the product left its hands.

After examining a multitude of cases and legal writers, we think the most accurate test for a "defect" within strict tort liability is set forth in Dunham v. Vaughn & Bushnell Mfg. Co., 247 N.E.2d 401, 403 (Ill. 1969), where it was held: "Although the definitions of the term 'defect' in the context of products liability law use varying language, all of them rest upon the common premise that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function."

As shown by the evidence admitted at trial through Professor Baker, and under the authority of *Shoshone* and *Dunham,* appellant adduced sufficient proof to be entitled to instruction of the jury on the doctrine of strict tort liability for defect in design of the door by Dor-O-Matic, because it failed to perform in the manner reasonably to be expected in light of its nature and intended function and was more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community. See also Greeno v. Clark Equip. Co., 237 F.Supp. 427, 429 (N.D. Ind. 1965).

On the other hand, there was no evidence tending to show the defective relay was the same one installed by Dor-O-Matic before the door left the manufacturer; in which event, if there was a substitution of the part through remodeling or repair of the door, someone else, but not Dor-O-Matic, would be liable to appellant if the design were found not to be defective. The defect must have been present when the product left the manufacturer or he cannot be held liable. Shoeshone Coca-Cola Bottling Co. v. Dolinski, supra; Suvada v. White Motor Co., supra; Restatement (Second) of Torts § 402A(1)(b).

As to the time for which a manufacturer, distributor or other person may be held liable for his product, we believe the correct ruling was announced in Dunham v. Vaughn & Bushnell Mfg. Co., supra, which involved a hammer used for 11 months when a chip flew off the head and struck the plaintiff in the eye as he was striking a metal pin. Justice Walter Schaefer, writing for the unanimous Illinois Supreme Court, said the answer is "properly supplied by a jury." 247 N.E.2d at 403. That decision held: "The jury could properly have concluded that, considering the length and type of its use, the hammer failed to perform in the manner that would reasonably have been expected, and that this failure caused the plaintiff's injury." *Id.* See also Ulmer v. Ford Motor Co., 452 P.2d 729 (Wash. 1969).

3. Respondent Mapes Hotel offered instruction No. 22[1] taken from California Jury Instructions Civil (BAJI) 213(i) (4th ed.) on the duty of an invitor to an invitee, but omitted therefrom the following wording: "However, it is the duty of an invitor to know of any defective or dangerous condition that would be revealed to him by the exercise of ordinary care, and he is conclusively presumed to know of any dangerous

---

[1]"The owner or occupant of premises, whom I shall call an invitor, may not be held liable for an injury suffered by an invitee, which resulted from a defective or dangerous condition not caused by a negligent act of the invitor, himself, and of which the invitor had no knowledge, unless that condition existed for such a length of time that if the invitor had exercised ordinary care, he would have discovered it and could and would have remedied it before the time of the injury.

"Nor may the invitor be held liable if, having exercised ordinary care, he discovered such a condition before the time of the injury, but not long enough before to provide him the time reasonably necessary to remedy the ·condition or to give reasonable warning or to provide reasonable protection."

condition that was negligently created by himself or by an employee acting within the scope of his employment."

Appellant complains the given portion is couched in negative terms, while the omitted portion imports the positive duty. While we would have been inclined to state the invitor's duty in positive rather than negative terms, the trial court did not commit error in refusing to do so. State v. Jones, 7 Nev. 408 (1872); State v. Martel, 32 Nev. 395 (1910); Southern Pacific Co. v. Watkins, 83 Nev. 471, 493, 435 P.2d 498 (1967).

4. Appellant contends the lower court erred in admitting the accident report of the Mapes Hotel security guard because it contained hearsay. The record conclusively shows the only objection made by appellant's counsel when the report was offered in evidence was that it was cumulative. There was no error; hearsay is admissible unless objected to on that ground. Barra v. Dumais, 76 Nev. 409, 414, 356 P.2d 124 (1960).

5. Since we hold the lower court should have instructed upon the strict tort liability doctrine in this case, we also say evidence of subsequent, similar accidents involving the same door are relevant to causation and a defective and dangerous condition under that theory.

In 1 Frumer & Friedman, Products Liability § 12.01(4), the authors say: "[E]vidence of subsequent accidents is not ordinarily pertinent to the issue of notice or knowledge. But such evidence may be considered pertinent in determining whether or not the product was hazardous."

Likewise, B. Witkin, California Evidence § 353 (2d ed. 1966), states: "The relevancy of other accidents, whether prior or subsequent, depends on the purpose for which the evidence is offered. A subsequent accident would not be relevant on the issue of *knowledge or notice* of a possibly dangerous condition at the time of the injury giving rise to the action. But a subsequent accident at the same or a similar place, under the same or similar conditions, is just as relevant as a prior accident to show that the condition was in fact *dangerous or defective,* or that the injury was *caused* by the condition." (Emphasis in the original.)

We do not think the rule in Southern Pacific v. Watkins, supra, at 486, dealing with evidence of prior accidents relating

to notice is any authority upon this point, as that opinion expressly left open the question here decided.

6. The trial court allowed in evidence three prior repair orders on the door causing the accident under Georgia's negligence theory. It excluded 16 other repair orders for other doors or for repairs subsequent to the accident. We see no error in those rulings.

However, when the case is retried on the strict tort liability doctrine, a different issue is presented. Should the repair orders, prior or subsequent, tend to prove the faulty design or manufacture or any other necessary element of that cause of action, they would be admissible.

7. Appellant's counsel points out to us in the record of the trial repetitive instances of the trial judge's remarks and conduct which he contends show comment on the credibility of expert witnesses and on testimony, expressions of impatience, volunteered remarks having nothing to do with rulings, rebuffs to counsel for his trial tacts, and other comments and conduct amounting to judicial misconduct. Counsel also offers the affidavit of a juror testifying to a comment made by the trial judge to some of the trial jurors in an elevator the first day of the trial; "Isn't this the most boring case you have ever heard?" The juror's affidavit also went on to say that the only time the Judge appeared alert was when he prodded counsel to hurry things along, and this tended to disrupt counsel for both sides. The juror also said she believed it was obvious that the Judge was prejudiced against the plaintiff-appellant.

Counsel argues that in accumulation, the judge's comments and conduct amounted to prejudicial error even though he made no specific objection at trial.

A former Chief Justice of this Court, Patrick A. McCarran, said in Peterson v. Pittsburgh Silver Peak Gold Mining Co., 37 Nev. 117, 140 P. 519 (1914): "While it is true that not every remark of the trial court will constitute reversible error, where it is made with reference to the admissibility of evidence, yet there is nothing of which a *nisi prius* judge should be more careful than in his remarks or assertions made with reference to admitted or rejected testimony during the course of a trial. The average juror is a layman; the average layman looks with most profound respect to the presiding judge; and the jury is, as a rule, alert to any remark that will indicate favor or disfavor on the part of the trial judge. Human opinion is ofttimes formed upon circumstances meager and insignificant in their outward appearance; and the words and utterances of a trial judge, sitting with a jury in attendance, are liable,

however unintentional, to mold the opinion of the members of the jury to the extent that one or the other side of the controversy may be prejudiced or injured thereby.

" . . .

"If remarks made by the judge in the progress of a trial are calculated to mislead the jury or prejudice either party, it would be grounds for reversal. . . .

"While it may be reasonable to assume that remarks of the trial judge, such as those complained of in this case, may have an influence prejudicial to one or the other side of the case, yet, in view of the rule that the party who alleges error must establish the same clearly, we would not disturb the judgment in this case by reason of the errors assigned with reference to the remarks of the trial court." 37 Nev. at 121–22.

Canon 15 of the Canons of Judicial Ethics of the American Bar Association, adopted by this Court as Supreme Court Rule 220, reads:

"1. A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.

"2. Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants or witnesses, he should avoid a controversial manner or tone.

"3. He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment."

We disapprove of the type of judicial conduct disclosed by the record. We are not compelled in this case to rule upon its prejudicial effect, however, because the error was not preserved for our consideration. Miller v. Western Pacific R. R. Co., 24 Cal.Rptr. 785 (Cal.Dist.Ct.App. 1962); c.f. Nevada State Bank v. Snowden, 85 Nev. 19, 449 P.2d 254 (1969); Gaudette v. Travis, 11 Nev. 149 (1876).

The judgment is affirmed as to Respondent Mapes Hotel

Corporation and reversed and remanded for a new trial as to Respondent Dor-O-Matic. *Novack v. Hoppin*, 77 Nev. 30, 359 P.2d 83 (1961).

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.