MILDRED I. WORRELL, NOW KNOWN AS MILDRED I. SANDERSON, APPELLANT, *v.* WILLIS BARNES, DBA BARNES CONTRACTING, RESPONDENT.

No. 6252

May 4, 1971                                484 P.2d 573

*Bradley & Drendel, Ltd.,* of Reno, for Appellant.

*Diehl, Recanzone & Evans,* of Fallon, for Respondent.

## OPINION

By the Court, ZENOFF, C. J.:

In Shoshone Coca-Cola v. Dolinski, 82 Nev. 439, 420 P.2d 855 (1966), this court applied the doctrine of strict liability to the field of foodstuffs and bottled beverages. In Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 470 P.2d 135 (1970), the doctrine was applied to the design and manufacture of all types of products, in that case a revolving door. The principal question of this appeal is whether the doctrine will be applied to the composition and installation of a residential gas system which was added to the gas system that was originally installed in the construction of a house.

Willis Barnes, doing business as Barnes Contracting, contracted with Mrs. Mildred I. Sanderson, formerly known as Mildred I. Worrell, to remodel her house situated on the edge of Walker Lake near Hawthorne, Nevada. The work consisted of some carpentry work and the connection of various appliances in the house to an already existing liquefied petroleum gas system. The appliances were not supplied by Barnes.

Part of the contract called for the installation of a water heater in the bathroom. To connect the water heater a line was run from the bathroom down through the floor and to the

connector. A leaky fitting which was part of the added work and which was under the bathroom allowed propane to escape and form a pool under the bathroom. The draft from the water heater drew propane up around the pipes leading to the bathroom up to the flame of the water heater and it ignited. The flame followed the gas back to where the gas was escaping from the fitting, melted the fitting and set the house afire, damaging the house and its contents.

Mrs. Sanderson alleged negligence on the part of Barnes as one cause of action and later amended the complaint to allege a second cause of action based on strict liability and a third cause of action based on breach of warranty. The second and third causes of action were dismissed by the court and the jury returned a verdict in favor of the defendant on the first cause of action which was grounded on negligence.

1. Courts and commentators have been proceeding apace in advancing theories of action in products liability cases since MacPherson v. Buick Motor Co., 111 N.E. 1050 (N.Y. 1916). *See* Comment, 15 Wayne L.Rev. 1558 (1969), and Comment, 23 Wash. & Lee L.Rev. 101 (1966). To a large extent on the basis of Dean Prosser's urgings, innocent consumers have been allowed to sue manufacturers for injuries caused by defective products. *See* W. Prosser, *The Assault upon the Citadel (Strict Liability to the Consumer),* 69 Yale L.J. 1099 (1960); and W. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn.L.Rev. 791 (1966). Under the theories advanced, injured consumers have been allowed to proceed on the theory of strict liability, which requires no showing of negligence. *Shoshone Coca-Cola,* supra, and *Ginnis,* supra; Greenman v. Yuba Power Products, Inc., 377 P.2d 897 (Cal. 1962); Fisher v. Simon, 112 N.W.2d 705 (Wis. 1961).

The manufacturer and seller are not held liable as insurers and their liability is not absolute simply upon evidence of injury alone. *See* P. Keeton, *Products Liability,* 41 Tex.L.Rev. 855, 858 (1963). Rather, it is the claimant's burden to demonstrate that the product was defective and that the defect arose out of design or manufacture while the article was in the control of the manufacturer. However, it makes no difference whether the manufacturer was or was not negligent, acted in good faith, or even took every possible precaution to prevent

defects. If in fact the article was defective when it left the manufacturer's control, liability will be imposed. Rapson, *Products Liability under Parallel Doctrines: Contrasts between the Uniform Commercial Code and Strict Liability in Tort,* 19 Rutgers L.Rev. 692, 698 (1965). There is a strong and growing tendency where there is no blame on either side to ask who can best bear the loss and hence to shift the loss by creating liability where there has been no fault. Prosser, Law of Torts, p. 508 (3d ed. 1964).

As in the application of the doctrine to cases where injury was caused by foodstuffs, automobiles, medicine and others, strict liability has been applied to homes or builders. The nature of the product is such that superior and exclusive knowledge in the builder or fabricator is called for and he therefore must bear the responsibility of its quality within reasonable limits. Schipper v. Levitt & Sons, Inc., 207 A.2d 314 (N.J. 1965); Humber v. Morton, 426 S.W.2d 554 (Tex. 1968); Kriegler v. Eichler Homes, Inc., 74 Cal.Rptr. 749 (Cal.App. 1969). Especially is this true where, as here, the contractor deals with a hazardous product. *Cf.* Annot., 80 A.L.R.2d 598 (1961); and 1 R Hursh, *American Law of Products Liability* § 6.24 (1961).

The ordinary purchaser is not more capable of detecting a defect in a chimney flue or vent of a heating apparatus (*Schipper,* supra) or faulty plumbing covered by a concrete slab foundation (*Humber,* supra), in a house erected by a builder of two than in one constructed by a quantity builder of 200. Avner v. Longridge Estates, 77 Cal.Rptr. 633 (Cal.App. 1969); 1969–70 Annual Survey of American Law, p. 474; 13 A.L.R.3d 1057, 1097 (1967). When a plaintiff proves that while he was using an instrumentality in a way it was intended to be used he was injured as a result of a defective design and/or manufacture which made the instrumentality unsafe for its intended use, and that he was unaware of the defect his burden has been accomplished. Restatement of Torts 2d, Comment G, § 402A. An owner relies upon the skill of the fabricator of a piping system, and he has a right to expect freedom from injury on the basis of the fabricator's superior knowledge.

The product which Mrs. Sanderson claims was defective was that part of the gas system which Barnes added onto the original gas system that had already been installed in her house. Experts testified it was their opinion that the fire started from a leaky fitting underneath the bathroom. Mrs. Sanderson

testified that after the work was completed on the house no one else worked on it so the product was not changed after it had left Barnes' employee's hands.

The leaky fitting comes within the definition of a defective product. It would be unreasonable to expect Mrs. Sanderson to know the intricacies of the gas connections and the system. She relied on Barnes' skill to furnish a suitable product. The system consisted of fabrications of copper tubing through fittings, a subject not within the knowledge of one not educated in that work. It was Barnes' duty to see that the house was safe for occupancy within the limits at least of the work he was to perform and the product he was to furnish.

2. In dismissing Mrs. Sanderson's common-law action in strict liability, the lower court also dismissed her action for breach of statutory implied warranty. Both actions were dismissed apparently on the basis that Barnes had not manufactured "goods."

As we hold that Barnes must be said to have manufactured and sold a "product" so as to bring into operation the doctrine of strict liability, so also must we deem this case to involve "goods" within the purview of the Uniform Commercial Code. NRS 104.2315 and 104.2105(1). See Rapson, 19 Rutgers L.Rev. 692 (1965); Newmark v. Gimbels, Inc., 258 A.2d 697 (N.J. 1969).

3. Another ground asserted for appellate review was the refusal of the trial court to allow the appellant to enter into evidence respondent's failure to obtain a license from the Nevada Liquefied Petroleum Gas Board as required under NRS 590.465 through 590.645. There being no causal connection between the purported violation of the ordinance and the accident, failure to have a license by itself was not germane to the issue of negligence. Lietaert v. Shinners, 75 Nev. 509, 347 P.2d 282 (1959). As a matter of fact, Barnes' employee, Mr. Clark, had ten years' experience working with copper tubing and connecting it. Nor do we find that the court committed error in failing to give a proper instruction pertaining to the standard of care required when handling a dangerous substance because the jury had been otherwise instructed on the subject. Southern Pacific Co. v. Watkins, 83 Nev. 471, 435 P.2d 498 (1967).

We decide, however, that the trial court erred in compelling

the plaintiff to present her case on the basis of purported negligence and depriving her of the benefits of the common-law doctrine of strict liability and the statutory rule of implied warranty.

Reversed and remanded for further proceedings.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.