944 P.2d 800 (1997)
Ronald J. REINGOLD, Appellant,
v.
WET `N WILD NEVADA, INC., A Nevada Corporation, Respondent.
No. 27684.
Supreme Court of Nevada.
August 28, 1997.
*801 Jason A. Awad & Associates and John P. Kelleher, Las Vegas, for Appellant.
William B. Palmer, II, Las Vegas, for Respondent.

OPINION
SHEARING, Chief Justice:
In early July 1989, appellant Ronald J. Reingold ("Reingold") and his son, Kevin Reingold ("Kevin"), visited Las Vegas from their home in New York. On the morning of July 6, 1989, Reingold, Kevin, and two friends arrived at the waterpark owned by respondent Wet `N Wild Nevada, Inc. ("Wet `N Wild"). After enjoying two waterpark rides, the group decided to go on The Flumes, which was a very steep slide. After Reingold descended the slide, he landed in the catch pool at the bottom and proceeded to walk toward the edge of the pool to exit. The outermost part of the pool consists of an upward incline ending at the top of the pool in a rolled edge, leading to the concrete sidewalk surrounding the pool. A railing is situated on the sidewalk a few feet from the edge of the pool.
As he was walking up the incline toward the edge of the pool, Reingold was looking ahead when he suddenly slipped and fell, causing excruciating pain on his left side. When he tried to get up, the pain was so bad, he fell again, scraping his left knee on the concrete. He yelled for Kevin, who helped him over to the railing. Wet `N Wild personnel took Reingold to the first aid station until an ambulance arrived and took him to the hospital. Reingold had suffered a broken left hip which required surgery that evening.
Reingold filed a complaint against Wet `N Wild for negligence. After a trial in March, 1995, the jury returned a verdict for Wet `N Wild and against Reingold, finding that Reingold was eighty percent at fault while Wet `N Wild was only twenty percent negligent. Reingold appealed. The principal issues for this court to consider concern records of other accidents at Wet `N Wild. In view of our decision on these issues, it is unnecessary to consider the remaining arguments.
Before trial, Reingold filed a motion titled "Motion in Limine as to Defendant's Knowledge of Existence of Dangerous Condition," asking the district court to admit evidence of both prior and subsequent accidents occurring at Wet `N Wild. Both the title of the motion and the cases cited in support of the motion focused on the evidence being necessary to show the defendant's prior knowledge of a dangerous condition. Subsequent accidents are irrelevant on the issue of prior notice. Consequently, the district court denied the admission of evidence regarding subsequent accidents. Reingold now argues that the district court's refusal to admit the evidence of the subsequent accidents was error.
*802 This court has previously held that evidence of subsequent, similar accidents involving the same condition may be relevant on the issues of causation and whether there is a defective and dangerous condition. Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415, 470 P.2d 135, 139 (1970). However, evidence of subsequent accidents may not be admitted to demonstrate a defendant's knowledge of the condition prior to the instant accident. See id.; B.E. Witkin, California Evidence § 353 (2d ed. 1966). Since Reingold's motion sought to introduce evidence of subsequent accidents for the purpose of proving Wet `N Wild's knowledge of the dangerous condition, the trial court was correct in denying the admission of the subsequent accidents as irrelevant on that issue.
Before trial, Reingold propounded interrogatories upon Wet `N Wild regarding any slip and fall accidents occurring between July 1984 and July 6, 1989. At trial, Gary Daning, the general manager of Wet `N Wild, testified that any first aid logs are routinely destroyed every season. Therefore, the logs for 1989 and prior would have already been destroyed well before Wet `N Wild received the July 3, 1991 complaint commencing suit.
At trial Reingold asked for the following jury instruction:
Where relevant evidence which would properly be part of the case is within the control of the party whose interest it would naturally be to produce it, and he fails to do so, without satisfactory explanation, the jury may draw an inference that such evidence would have been unfavorable to him.
The district court refused to give the proffered instruction on the grounds that there was no intent to willfully suppress the logs. NRS 47.250(3) does provide for a disputable presumption "[t]hat evidence willfully suppressed would be adverse if produced." The district court apparently believed that "willful suppression" requires more than following the company's normal records destruction policy. We disagree. There is no dispute that the records were "willfully" or intentionally destroyed. Wet `N Wild claimed that all records are destroyed at the end of each season. This policy means that the accident records are destroyed even before the statute of limitations has run on any potential litigation for that season. It appears that this records destruction policy was deliberately designed to prevent production of records in any subsequent litigation. Deliberate destruction of records before the statute of limitations has run on the incidents described in those records amounts to suppression of evidence. If Wet `N Wild chooses such a records destruction policy, it must accept the adverse inferences of the policy.
Generally, when relevant evidence is destroyed, a trier of fact may draw an adverse inference from the destruction. Akiona v. U.S., 938 F.2d 158, 161 (9th Cir.1991).
A trial court has broad discretion to permit such an adverse inference. Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.1993). In Glover, a jury instruction appeared to state that a finding of bad faith was a prerequisite to drawing an adverse inference. The Ninth Circuit noted that "simple notice of `potential relevance to the litigation'" was sufficient, and ordered the trial court to clarify the instruction on remand. Id. at 1329-30 (quoting Akiona, 938 F.2d at 161).
There are two policy rationales for the adverse inference. First, the evidentiary rationale springs from the notion that "a party with notice of an item's possible relevance to litigation who proceeds nonetheless to destroy it is more likely to have been threatened by the evidence than a party in the same position who does not destroy it." Welsh v. U.S., 844 F.2d 1239, 1246 (6th Cir.1988). "The second rationale acts to deter parties from pretrial spoliation of evidence and serves as a penalty, placing the risk of an erroneous judgment on the party that wrongfully created the risk." Id. (quotation omitted). Both rationales seem to apply to Wet `N Wild.
For the foregoing reasons, we reverse the judgment of district court and remand for a new trial.
SPRINGER and MAUPIN, JJ., concur.
ROSE, Justice, concurring:
I concur with the majority and find two additional reasons why this case should be *803 reversed and remanded for a new trial. First, the trial court refused to admit evidence of two accidents subsequent to the incident in question; and second, the nurse employed by Wet `N Wild deliberately informed the jury that Reingold was receiving Medicare benefits after specifically being told by the court and her attorney not to mention this collateral source of assistance.
This court has held that "evidence of subsequent, similar accidents involving the same [condition] are relevant to causation and a defective and dangerous condition." Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 415, 470 P.2d 135, 139 (1970). However, this holding was in reference to a strict product liability claim, not a negligence claim as is the one in the present matter. See id. In reaching its conclusion regarding subsequent accidents, this court was persuaded by the discussion in a California treatise which did not limit subsequent occurrences to only strict liability cases:
"The relevancy of other accidents, whether prior or subsequent, depends on the purpose for which the evidence is offered. A subsequent accident would not be relevant on the issue of knowledge or notice of a possibly dangerous condition at the time of the injury giving rise to the action. But a subsequent accident at the same or a similar place, under the same or similar conditions, is just as relevant as a prior accident to show that the condition was in fact dangerous or defective, or that the injury was caused by the condition."
Id. (quoting B.E. Witkin, California Evidence § 353 (2d ed. 1966)); see also B.E. Witkin, California Evidence § 389 (3d ed. 1986).
Additionally, Ault v. International Harvester Company, 13 Cal.3d 113, 117 Cal.Rptr. 812, 817, 528 P.2d 1148, 1153 (1974), held that the lower court did not err by admitting evidence of both prior and subsequent accidents to prove a defective condition or cause of the accident. The court noted that the purpose of providing evidence of the other accidents was to show that all the accidents, including the one in litigation, occurred due to the dangerous condition. Id.
The United States Supreme Court stated that:
[The other accidents] were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk.... The frequency of accidents at a particular place would seem to be good evidence of its dangerous characterat least, it is some evidence to that effect.
District of Columbia v. Arms, 107 U.S. 519, 524-25, 2 S.Ct. 840, 844-46, 27 L.Ed. 618 (1883) (emphasis added). Although the Court did not indicate whether the other accidents were prior or subsequent, I believe that the occurrence of either type of accident should be "good evidence of its dangerous character." Id.
Reingold was receiving Medicare benefits that covered some of the expenses for his injuries, and Wet `N Wild's attorney instructed it's on-site nurse not to mention this fact when she testified. When she was asked what Reingold listed as his occupation, she responded, "He said he was disabled. And his insurance was Medicare." This statement was both non-responsive and in violation of the court's order. Post-trial, three of the eight jurors indicated that Medicare was openly discussed in jury deliberations. When a witness representing one of the parties deliberately violates a court order and brings before the jury evidence that is prejudicial to the other party, serious sanctions should be imposed. In this case, the reversal of the judgment in Wet `N Wild's favor would be appropriate.
Reversal and retrial of this case is mandated because of the reason stated by the majority and the additional errors made by the trial court that I have cited.
YOUNG, Justice, dissenting:
Because I believe the district court did not err in refusing to supply the "adverse inference" jury instruction, I respectfully dissent.
The majority correctly points out that a disputable presumption, "evidence willfully suppressed would be adverse if produced," exists in our statutory scheme. NRS 47.250(3). Therefore, if the trial court finds *804 that relevant evidence is willfully suppressed, the presumption arises. Thus, "a trial court ... has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior." Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir.1993) (emphasis added). I emphasize that the trial court possesses broad discretion in determining whether it finds that an "adverse inference" jury instruction is warranted under the specific facts of a case.
The majority seemingly superimposes its judgment over that of the district court by concluding that simple "housecleaning" removal of apparently unimportant first aid logs is a "willful suppression" of documents necessary to Reingold's litigation. I cannot join the majority in usurping the district judge's role in implementing his discretion and view of the facts. See Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 591 (1990) (holding that a trial court's findings of fact will not be overturned absent clear error).
"Willful" is defined as "done deliberately" and "intentional." Webster's Ninth New Collegiate Dictionary 1350 (1983). To me, willfully suppressing the logs means that Wet `N Wild purposely, deliberately, knowingly, intentionally sought to frustrate Reingold's efforts at a successful litigation against Wet `N Wild. I do not believe that the record reflects this type of conduct. Rather, I am in agreement with the lower court, which had the opportunity to observe the demeanor and evaluate the credibility of the witnesses, that Wet `N Wild innocently chose to routinely destroy the first aid logs.
Additionally, the logs contain mostly information about all minor scrapes, cuts, and bruises relating to any patron of the waterpark throughout the entire season. As the majority points out, the United States Court of Appeals for the Ninth Circuit requires only "simple notice of `potential relevance to the litigation'" as a prerequisite to the "adverse inference" jury instruction. Glover, 6 F.3d at 1329-30 (quoting Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991)). I submit that these logs, by themselves, do not contain the "potential relevance to the litigation" necessary to give Wet `N Wild "simple notice" sufficient to require continued possession of the logs for this particular lawsuit. I find it especially noteworthy the logs were destroyed as long as two years before Reingold filed his complaint. The record does not indicate that Reingold gave Wet `N Wild any other notice of his litigation prior to the routine destruction of the logs.
By destroying records of these minor injuries, I seriously doubt that Wet `N Wild had any intent specifically to thwart Reingold's litigation. As these logs were totally unrelated to Reingold's accident, I believe their destruction had little, if any, impact on the success of his lawsuit. This is especially persuasive in light of the fact that the jury found Reingold to be as much as eighty percent at fault for his own injuries.[1]
Further, Reingold's purpose in requesting the logs during the discovery phase of the lawsuit was to inquire about other similar accidents occurring in the same area. Therefore, I submit reversal of this case is unwarranted because Reingold did present ample evidence of prior accidents, and, although not presented at trial, he did have information regarding subsequent accidents.
Accordingly, I respectfully submit that the district court did not abuse its discretion by refusing to provide the adverse inference instruction.
NOTES
[1] In light of the strong jury verdict in favor of Wet `N Wild, I believe that had the instruction been required, as the majority contends, the district court's failure to give it was harmless error and reversal is unnecessary. See NRCP 61.